HAROLD H. SHERWOOD ET AL., RESPONDENTS, v. BERGEN-HACKENSACK SANITARY SEWER AUTHORITY, APPELLANTS.

Argued May 23, 1946—Decided February 4, 1947.

For the appellant Bergen-Hackensack Sanitary Sewer Authority, *Walter H. Jones.*

For the appellants County of Bergen and A. Theodore Holmes, treasurer, *Milton T. Lasher.*

For the Attorney-General, *Joseph Lanigan,* Deputy Attorney-General.

For the respondents, *L. Stanley Ford* (*Henry E. Russell,* of the New York bar, on the brief).

The opinion of the court was delivered by

PARKER, J. The question for decision is the constitutionality *vel non* of chapter 300 of the laws of 1945 (pages 852 to 881). Judge Leyden, sitting in a Supreme Court issue, held *ubi supra,* at page 56, that the act is special, and that as no notice had been given of an application to apply for the legislation as required by the constitution, the act was void. The present appeal challenges the propriety of that decision. We conclude that it should be affirmed, for reasons now to be stated.

The history of the legislation on this particular subject should properly be considered. The first act seems to have been passed in 1930 (chapter 144 of that year, *Pamph. L.,* at *p.* 556). It is entitled "An act to create a sewerage district to be called Hackensack Valley Sewerage District, to authorize the appointment and define the powers and duties of the commissioners therefor, to provide a plan for the prevention of the pollution of the Hackensack river and its tributaries and to authorize the raising and expenditure and payment of moneys necessary for this purpose," and it provided for the creation of a sewerage district inclusive of all "the natural drainage area of the Hackensack river and its tributaries" between Newark Bay and the New Jersey-New York State line. This, as a glance at the map will show, included the whole drainage area of the Hackensack River in New Jersey, and under the jurisdiction thereof. It does not appear that that statute has ever been challenged. A later act of 1933 (*Pamph. L., pp.* 1024-1057) legislates further as regards the same territory, and provides for a "Sewerage Authority" to deal with it.

The controversy now before us seems to have originated in 1945, when by chapter 300 (*Pamph. L., p.* 852) the legislature reduced the area of the "sewerage district" by eliminating from it all territory lying in Hudson County; so that as so reduced, it is confined to Bergen County alone. The language of the 1945 act, so far as material, is: "All those

municipalities now or hereafter existing, all or parts of which are situated and lie within the natural drainage area of the Hackensack River and its territories between the *boundary line of Hudson County and Bergen County* (italics ours) and the boundary line between the State of New Jersey and the State of New York." Or to put it simply, such part of the drainage area of the Hackensack River in this state as lies within Bergen County.

The settled rule in this state is that "a law is special, in a constitutional sense, when by force of an inherent limitation it arbitrarily separates some persons, places, or things, from others upon which, but for such limitation, it would operate." *Budd* v. *Hancock,* 66 *N. J. L.* 133. That decision was in the Supreme Court, but is fully recognized in this court. *Burlington* v. *Pennsylvania Railroad Co.,* 104 *Id.* 649, 654; *Raymond* v. *Teaneck,* 118 *Id.* 109, 112. Tested by that rule, it seems obvious enough that a statute undertaking to set up a drainage district for the Hackensack River and its tributaries, applicable to only one of the two counties drained by it, was properly held by Judge Leyden to contravene the constitutional requirements: and the judgment under review is accordingly affirmed.

HEHER, J. (Dissenting.) I take a different view. I do not regard the measure which became chapter 300 of the laws of 1945 (*Pamph. L., p.* 852) as a "private, special or local bill" within the purview of article IV, section VII, paragraph 9, of the State Constitution. That provision has reference to proffered legislation of a radically different character.

The principle which distinguishes the case in hand from *Attorney-General* v. *Tuckerton,* 67 *N. J. L.* 120, is exemplified in the case of *State* v. *Corson,* 67 *Id.* 178. The statute there under review regulated and controlled "the taking, planting and cultivating of oysters on lands lying under tidal waters of the Delaware Bay and Maurice River Cove, in the State of New Jersey;" and Chief Justice Gummere declared that, although the act dealt with the lands of the state lying under tide waters only in certain localities, "the matters which it regulates are of general, not local, concern. The lands

themselves belong to the people of the state, not to the citizens of the counties where they are located." He continued : "A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is, notwithstanding this fact, a general law, if it applies to all the citizens of the state and deals with a matter of general concern." Such is the case here. The statute under consideration is a sanitary and police regulation in the general public interest, for the elimination of the pollution of the Hackensack River and its tributaries in the particular area is necessarily a health measure of general concern. In the words of Mr. Justice Pitney in the case of *Van Cleve* v. *Passaic Sewerage Commissioners,* 71 *Id.* 183, 195, the primary purpose of the statute is "to establish, within and for a designated portion of the area of the state, a great public work for a great public purpose." Its design is the safeguarding of the health, not only of the people of the communities comprised within the sewerage district, but of the people of the state generally, particularly those within the Hackensack River area beyond the domain of the sewerage district. Pollution of watercourses not only has relation to the health of the people directly served by the stream, but the health of the people at large. The cleansing of polluted rivers and natural streams, and the prevention of their contamination, is no less a matter of general state concern than the cultivation of oysters in a particular tidal-water locality.

The object of the act is expressly declared to be "the protection and preservation of public health, safety and welfare." *Section* 63. All the municipalities "now or hereafter existing, all or parts of which are situated and lie within the natural drainage area of the Hackensack River and its tributaries between the boundary line of Hudson County and Bergen County and the boundary line between the State of New Jersey and the State of New York," are constituted a sewerage district under the title of Bergen-Hackensack Sanitary Sewer District; and the Bergen-Hackensack Sanitary Sewer District Authority, consisting of five members to be appointed by the Board of Chosen Freeholders of the County of Bergen, was thereby created. *Sections* 1, 2. The district thus formed

is not a municipal corporation, for it lacks the political and legislative power characteristic of such corporate entities, but is rather a state agency for the performance of a function of general concern. The authority is constituted "a body politic and corporate, with perpetual succession as a governmental instrumentality for the purpose, among others, of the protection of the public safety, health and welfare;" and it is provided that the authority shall be "a separate corporate entity," and its "bonds and other obligations" shall not be "in any way a debt of the state or of any county or municipality," and shall not create "any indebtedness or obligation, either legal, moral or otherwise, of the state or of any county or municipality," and neither the state nor any county or municipality shall be "liable thereon," nor shall "such bonds or other obligations be payable out of any funds other than those of the authority," and also that the authority shall not have the power "to incur any indebtedness on behalf of or in any way to obligate the state or any county or municipality, except to the extent, if any, provided in any contract entered into by any municipality, pursuant to the provisions" of the act. *Sections* 19, 20. And the state made a pledge to the holders of bonds issued under the act to withhold the grant of authority for the "construction or maintenance" of any competitive sewer system, and not to curtail the power therein vested in the authority and the affected municipalities to enter into revenue producing contracts, or the authority's faculty for performing its contracts with the holders of its bonds, or the rights and remedies of the bondholders, until the bonds were fully discharged. *Section* 21. The authority is empowered to enter into contracts with adjacent authorities, commissions, counties or other similar bodies for the conveyance and treatment of their sewage; and to enter into contracts with municipalities, private sewer companies and persons or corporations engaged in public or private industry within the sewer district, for the use of the authority's facilities, and with "any other municipality or any private sewer company which may be discharging sewage directly or indirectly into the Hackensack River or its tributaries and which might advantageously use the" authority's facilities. *Sec-*

*tions* 22, 33. Compensation is to be rendered for the use of the facilities at a fixed gallonage rate, sufficient for self-support and the retirement of the authority's outstanding bonds. *Sections* 43, 45, 47. The authority is empowered to purchase and acquire lands within the sewer district and to erect all structures needful for the performance of its functions; and title to all such property is vested in the authority, and is exempt from "municipal, county and state taxes." *Sections* 36, 38. All construction work is made subject to the approval of the State Board of Health, "as a sanitary measure." *Section* 26. The board of freeholders is given no dominion or control whatever over the authority, except the power to appoint its members and fix their salaries and remove them for cause. *Sections* 3, 4. The authority is given sole and exclusive control of the moneys received for its services and their disbursement. It may select its own bank depository; but it may also deposit its funds with the State Treasurer, as its "agent," who is enjoined not to commingle such moneys with any other moneys, and to pay out and disburse them on the requisition of the authority. *Sections* 12, 13. The moneys required for the purchase of the lands and the erection of the structures needed for the doing of the work thus assigned to the authority are to be raised by a bond issue; but the County of Bergen is empowered to contract with the authority for the provision of such moneys as may be necessary to defray the costs and expenses of preparing a "project report" as therein directed, and to carry out its terms, "up to the time of the commencement of, but not including, the construction or acquisition or both, of the district sewer system;" and such advancements are ordered to be repaid by the authority to the county out of the proceeds of the next ensuing bond issue, or "any other available moneys of the authority." *Sections* 48, 49.

Thus, the fulfillment of this project in the general interest of the state is not delegated to the several municipalities within the area giving rise to the problem, or to a newly created municipality. The remedial process is to be had through the instrumentality of an executive and administrative agency of the central authority. at the cost of the municipalities,

private sewer companies and industries contributing to the pollution of the river and its tributaries, who may desire to employ the facility. The authority is not a municipal body or an agency of the affected municipalities, but an instrument of the state for the advancement of the general good and welfare. The work assigned to it is of a public as distinguished from a local or municipal character. It is, to use the language of this court in *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 71 *N. J. L.* 574, "a public enterprise, as distinct from a municipal affair," and the regulations "are purely incidental to such extra-municipal scheme." The act is not in quality local and special in contradistinction to the essential general public welfare.

The vesting in the local board of freeholders of the power to appoint and remove the authority's members, and to fix their salaries, is not of determining significance in this regard. That has no relation to the fundamental character of the statute. The central legislative body, in the exercise of its inherent power to eradicate a peril to the general public health and welfare, has made the newly created authority, as the instrument of its policy, a "separate corporate entity" distinct from the county and the municipalities comprised within the area of its jurisdiction. It is a self-sufficient and self-sustaining political and economic unit designed to serve, not the county or a need peculiarly local, but a major general interest of the state. And, upon dissolution, title to its property and assets will vest in the state, its creator, and not in the county. *Wilson* v. *State Water Supply Commission,* 84 *N. J. Eq.* 150.

Laws are general "because their subject-matter is of common interest to the whole state, and not local; because the provisions embrace the whole subject, or a whole class of it. Not being confined to a part they are not partial nor special. The state contains a great variety of subjects of legislation, each requiring provisions peculiar to itself. Generic subjects may be divided and subdivided into as many classes as require this peculiar legislation. * * * A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." *Lewis'*

*Sutherland Statutory Constructioin* (*2d ed.*), §§ 195, 196. A law is not necessarily a local law because its operation is confined to a particular locality, if it affects the interests of the people at large. *Gaither* v. *Jackson,* 147 *Md.* 655; 128 *Atl. Rep.* 769; 59 *C. J.* 737. There is no formula which will automatically classify every case in this behalf. Whether a statute is general or special ordinarily depends upon the character of the subject-matter and the special circumstances of the case. Special laws are those made "for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances; local laws are special as to place. When prohibited they are severally objectionable for not extending to the whole subject to which their provisions would be equally applicable, and thus permitting a diversity of laws relating to the same subject. The object of the prohibition of special or local laws is to prevent this diversity." *Lewis' Sutherland Statutory Construction* (*2d ed.*) § 199. Due weight must needs be given to the legislative conception of this as a general law. In my view, that is a cogent and persuasive, if not the determinative, circumstance.

We are obliged to assume that the legislature found a unique and exceptional need for the particular statutory remedy, and the nonexistence of a comparable situation elsewhere, now or reasonably likely in the near future, which called for the like remedial process, and a finding also that a similar law of wider and more general territorial application was neither necessary nor feasible. There was judgment on the pleadings, without evidence or stipulation of facts; and it is fundamental that, nothing appearing *contra,* every possible presumption is indulged in favor of the constitutional sufficiency of the law and the requisite factual basis. *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504; *Ryan* v. *Housing Authority of Newark,* 125 *N. J. L.* 336. Judicial intervention is justifiable only where there is a clear and palpable evasion of the constitutional mandate.

The noninclusion in the sewer district of the Hudson County municipalities situate in the drainage area of the

river is not conclusive of the question of the generality of the legislation in the constitutional sense. The Passac Valley sewer district did not originally include the entire natural drainage area of the river. The district was enlarged as late as 1942. *Pamph. L., p.* 447. The particular exigency, the sources, character and the *quantum* of the pollution, the need *vel non* for the inclusion of the lower Hudson County municipalities, and the engineering and fiscal problems involved, were all factors that entered into the legislative determination of the remedy for the evil; and it is to be presumed that this measure was entirely sufficient to that end. It must be assumed that the lower communities had ample sewerage facilities and were not contributors to the condition calling for correction, and that the remedy corresponds to the need. There is no ground whatever for the view that the law discriminates between different localities without any reasonable basis or necessity arising from the special circumstances. The act supplies a remedy for a problem which the state had long considered its own and had found insoluble by other means.

The contrary view of the quality of the cited constitutional limitation would, I greatly fear, seriously curtail the legislature's power to organize such districts and to provide for compulsive participation by the offending municipalities, where the public interest demanded that course. For example, chapter 138 of the laws of 1946 (*Pamph. L., p.* 639), which would seem to provide an alternative course if the instant act be deemed invalid on the ground asserted, renders the exercise of the power there granted to organize such sewerage authorities optional with the several counties and municipalities, and classifies them as "an agency and instrumentality" of their respective creators.

It is a corollary of the foregoing that the act under review is not a private, local or special law "regulating the internal affairs of towns and counties," in contravention of article IV, section VII, paragraph 11 of the State Constitution. *Vide Van Cleve* v. *Passaic Valley Sewerage Commissioners, supra.*

There is no occasion to determine whether article IV, section VI, paragraph 4, of the State Constitution has any appli-

cation. The question has not been raised or argued. But it will not be amiss to point out that in the case of *Wilson* v. *State Water Supply Commission, supra,* the contract made in the purported pursuance of the statute contemplated the creation of a mortgage debt and the establishment of a sinking fund for the payment of the bonds thereby secured, in part from appropriations made by the legislature. Here, as we have seen, the act explicitly declares that none of the authority's obligations shall constitute a debt or liability of the state; and it would seem that where, as here, there is a definitive absolution of the state from any and all of the authority's obligations, the latter's debts are not within the constitutional mandate, no more than debts incurred by a county or municipality under legislative sanction. It would put a strain upon normal word usage to hold that such are debts or liabilities "of the state." Great care was exercised in the choice of language to express the absolute immunity of the state from all liability by reason of the acts of the authority; and all dealings with the authority would be on the basis of that limitation. The legislative scheme under consideration is plainly not an attempt to do by indirection the thing forbidden by the cited provision of the constitution. In the case of *Wilson* v. *State Water Supply Commission, supra,* there was a strong dissent by Mr. Justice Swayze, notwithstanding the provision for the payment into a sinking fund of any moneys appropriated by the legislature.

I would reverse the judgment and hold the act to be constitutional.

Chancellor Oliphant, Mr. Justice Perskie, Judge Dill and Judge McLean join in this dissent.

*For affirmance*—THE CHIEF JUSTICE, PARKER, BODINE, DONGES, WACHENFELD, WELLS, RAFFERTY, McGEEHAN, JJ. 8.

*For reversal*—THE CHANCELLOR. HEHER, PERSKIE, DILL, McLEAN. JJ. 5.