PAUL KIMBALL HOSPITAL, INC., A NOT-FOR-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, AND REGIONAL HEALTH PLANNING COUNCIL; BERGEN-PASSAIC HEALTH SYSTEMS AGENCY; SOUTHERN NEW JERSEY HEALTH SYSTEMS AGENCY, INC. AND HUDSON HEALTH SYSTEMS AGENCY, INTERVENORS-PLAINTIFFS-RESPONDENTS, v. BRICK TOWNSHIP HOSPITAL, INC., A NOT-FOR-PROFIT CORPORATION OF THE STATE OF NEW JERSEY; AND JOANNE E. FINLEY, M. D., COMMISSIONER OF HEALTH OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND JOHN J. DEGNAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, INTERVENOR-DEFENDANT-APPELLANT.

Argued January 27, 1981—Decided June 24, 1981.

430

434

John L. Bonello* argued the cause for appellant Brick Township Hospital, etc. (*Anschelewitz, Barr, Ansell & Bonello*, attorneys; *Michele R. Donato*, on the brief).

*Andrea M. Silkowitz,* Deputy Attorney General, argued the cause for appellants Joanne E. Finley, M.D., etc., and John J. Degnan, etc. (*John J. Degnan,* Attorney General of New Jersey, attorney; *Stephen Skillman,* Assistant Attorney General, of counsel).

*Peter R. Strohm,* argued the cause for respondent Paul Kimball Hospital, Inc., etc. (*Rothstein, Mandell & Strohm,* attorneys).

*Burton L. Eichler* argued the cause for respondents Regional Health Planning Council, et al. (*Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

This litigation involves a constitutional attack on an amendment to the Health Care Facilities Planning Act ("Act"), *N.J. S.A.* 26:2H–1 *et seq.,* which exempts certain nonprofit corporations from the requirement of obtaining an initial certificate of need to operate as a hospital. It is asserted that the amendment, *N.J.S.A.* 26:2H–7.1 (section 7.1), violates the State proscription against special legislation, *N.J.Const.* (1947), Art. IV, § VII, par. 9(8), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

These issues arose when plaintiff, Paul Kimball Hospital, Inc., a hospital located in Lakewood, instituted suit against the Brick Township Hospital, Inc. ("Brick") and Joanne E. Finley, Commissioner of Health. The amendment in question exempted from the Act's licensing requirement a nonprofit corporation which, before the effective date of the Act on August 21, 1971, had acquired land for a hospital to be located within a municipality which had appropriated funds for its construction as authorized by *N.J.S.A.* 44:5–10.2. The Attorney General intervened as a party defendant and the Regional Health Planning Council, Bergen-Passaic Health Systems Agency, Southern New Jersey Health Systems Agency, Inc. and Hudson Health Sys-

tems Agency intervened as plaintiffs. The issues were decided on cross-motions for summary judgment. The trial court found the statute unconstitutional as special legislation and the Appellate Division affirmed.

The following factual picture emerges from the documents submitted on the motions for summary judgment, viewed favorably to the defendants in accordance with established doctrine regarding such motions. See *Judson v. Peoples Bank & Trust Co.*, 17 *N.J.* 67 (1954).

A group of citizens residing in Brick Township organized Brick Township Hospital, Inc., a private nonprofit corporation, in May 1968 for the purpose of establishing and maintaining a hospital in the Township. Motivations for establishing the hospital were the long waiting periods for Township residents to obtain hospital beds and the need to travel distances beyond the municipality to various hospitals. On January 16, 1970 defendant purchased for $45,000 a 30-acre tract of land in the Township where the hospital was to be located. These funds had apparently been raised from private contributions. The municipal government of Brick Township, pursuant to *N.J.S.A.* 44:5–10.2, appropriated $50,000 each year from 1970 through 1975 toward the construction and operation of the hospital. Commencing in 1976 the annual appropriation was reduced to $25,-000. In this manner $375,000 has been accumulated and is currently being held in escrow. Schematic drawings of the proposed hospital made by consultants depicted the general design of the building, designated the area and elevations and showed interior space allocation. In addition the consultants prepared a planning report that contemplated a 500-bed hospital, the first phase consisting of 110 beds.

All the activities described above had been accomplished before the Health Care Facilities Planning Act became effective. The uncontradicted affidavit of J. Robert Lackey, Director of the Office of Comprehensive Health Planning in the State Department of Health, states that the defendant had substan-

tially satisfied all the prerequisites for obtaining a license under *N.J.S.A.* 30:11–1, the law which preexisted the Health Care Facilities Planning Act.

The Health Care Facilities Planning Act radically altered the extent of regulation and control over health care facilities and services. Among other things the Act required procurement of a certificate of need for construction or expansion of a health care facility or for institution of new health care services. *N.J.S.A.* 26:2H–7. A certificate of need was not required for hospitals which had been or were being constructed on August 21, 1971.

Brick requested permission from the Department of Health to construct the phase I facility without a certificate of need. Initially the Department ruled Brick did not qualify for the exemption. Subsequently, the Department decided to reconsider this decision and held a hearing for that purpose. The hearing officer recommended that Brick's activity prior to the effective date of the Act did not warrant the exemption. The recommendation was submitted to the Commissioner of Health, who did not act on the recommendation because Brick had in the meantime applied for a certificate of need. The Commissioner recognized "a need for some beds in the area," but denied the application for a certificate of need. However, she granted Brick permission to construct a full range ambulatory care facility. The denial was subject to review by the Health Care Administration Board and the applicant was entitled to a hearing prior to the Board's determination. *N.J.S.A.* 26:2H–9. Brick sought such a hearing and review. While the hearing was pending, the Legislature passed *N.J.S.A.* 26:2H–7.1 which reads as follows:

> Any nonprofit entity chartered by the State of New Jersey as a nonprofit corporation pursuant to Title 15 of the Revised Statutes, which had been so chartered and had acquired land for the purpose of constructing a hospital prior to the effective date of the act to which this act is a supplement, and when the land so acquired by such nonprofit corporation is located within a municipality that has provided an appropriation for the construction of a health care facility as authorized by P.L.1954, c. 266 (C. 44:5–10.2), then the proposed hospital of

such nonprofit corporation shall be exempt from the requirement of section 7 of
P.L.1971, c. 136 (C. 26:2H–7) relating to a certificate of need.

This section effectively exempted Brick from obtaining a certificate of need for construction of its phase I facility. It placed Brick in the same category as other facilities which on August 21, 1971 existed, were under construction, or had submitted construction plans to the Department.

The law was drawn with the Brick situation in mind. When introduced into the Assembly, the Statement attached to the Bill read as follows:

This bill is narrowly drawn to permit certain proposed health care facilities exemption from the requirement to obtain a certificate of need under the Health Care Facilities Planning Act. The bill would have the effect of enabling a hospital to be built in Brick Town, Ocean county. [Senate Institutions, Health and Welfare Committee, Statement to Assembly Bill 369 (1978)]

Both the trial court and the Appellate Division concluded that the amendment constituted special legislation in contravention of Art. IV, § VII, par. 9(8) of the New Jersey Constitution. Finding that the purpose of the Health Care Facilities Planning Act was to prevent costly and unnecessary duplication of health care facilities, *N.J.S.A.* 26:2H–1, the trial court reasoned that the amendment by eliminating the requirement of a certificate of need did not comply with this purpose. Since no rational relationship existed between the amendment and the stated objective of the Act, the amendment was invalid as special legislation and violated the equal protection of the law required by the Fourteenth Amendment.

The Appellate Division acknowledged that the test of whether a law is special legislation is the same as that which determines whether there is a denial of equal protection under the Fourteenth Amendment. It stated that this standard requires an analysis of the purpose and object of the enactment and whether the classification rests upon any rational or reasonable basis relevant to the purpose and object of the act. Recognizing that the grandfather clause embodied in the amendment may have been intended to further the legislative purpose in *N.J.S.A.* 44:5–10.2, the Appellate Division nevertheless found

that exclusions of situations where the land was located beyond the municipal boundaries or where no municipal funds were appropriated were illogical and unreasonable. Therefore the classification did not rest upon any rational or reasonable basis and the provision constituted special legislation.

Brick and the Attorney General filed notices of appeal. Brick also filed a petition for certification which was granted. 85 *N.J.* 113 (1980).

## I.

The Health Care Facilities Planning Act substantially expanded governmental control and regulation over hospitals. The legislation was enacted to effectuate the public policy that "hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health." *N.J.S.A.* 26:2H–1. No hospital was to be constructed or expanded until a certificate of need had been obtained. *N.J.S.A.* 26:2H–7. The certificate was not be to issued unless the "action proposed . . . [was] necessary to provide required health care in the area to be served, [could] be economically accomplished and maintained, and [would] contribute to the orderly development of adequate and effective health care services." *N.J.S.A.* 26:2H–8. Moreover no agency of the State or of any municipal government was permitted to approve the grant of funds for a health care facility constructed or expanded in violation of the Act. *N.J.S.A.* 26:2H–7. Furthermore, each facility had to obtain a license to operate, *N.J.S.A.* 26:2H–12 a(1), and a license could only be issued if the institution's premises, equipment and personnel were "fit and adequate," *N.J.S.A.* 26:2H–12 b(2). Uniform systems of cost accounting, reports and audit had to be established and maintained. *N.J.S.A.* 26:2H–12 a(2). A long range plan, reviewable annually, for health care facilities compatible with the State Health Plan, had to be prepared. *N.J. S.A.* 26:2H–12 a(4). Payments by government agencies for

health care services provided by a hospital were subject to reasonable rates to be fixed by the State Commissioner of Health. *N.J.S.A.* 26:2H–18 c; see *In re 1976 Hosp. Reimbursement Kessler Mem. Hosp.*, 78 *N.J.* 564 (1979).

The Act did *not* require that certificates of need be obtained for existing hospitals, although a certificate would be needed for any future expansion or construction. This exception grew out of the definition in the Act of "construction" as

> the erection, building, or substantial acquisition, alteration, reconstruction, improvement, renovation, extension or modification of a health care facility, including its equipment, the inspection and supervision thereof; and the studies, surveys, designs, plans, working drawings, specifications, procedures, and other actions necessary thereto. [*N.J.S.A.* 26:2H–2(c)]

Accordingly hospitals in existence were not required to obtain a certificate of need justifying their present status. Furthermore, the Department of Health exempted any hospital from obtaining a certificate of need for construction if the hospital had obtained a license or if its plans had been approved by or submitted to the Department. Thus some proposed new hospitals were exempted from obtaining a certificate of need even though physical construction of the facility had not begun.

In 1978 the Legislature added to this class those nonprofit institutions which had acquired land within a municipality provided the municipality had appropriated funds as authorized by *N.J.S.A.* 44:5–10.2 for construction of the hospital on that property. *N.J.S.A.* 26:2H–7.1. Proposed hospitals that satisfied these provisions as of August 21, 1971 were, like existing hospitals or those whose plans had been approved, excused from obtaining a certificate of need with respect to the initial facility. It is this amendment that plaintiffs challenge.

Exceptions of this type to regulatory statutes are commonly referred to as grandfather clauses. Grandfather clauses operate to exempt from the requirements of legislative enactments certain defined individuals or entities that, at the time the requirements become effective, meet specific defined criteria. The time of enactment is not critical when qualifica-

tions for grandfather status are keyed to the time of effectiveness of the regulatory scheme. See *Doller v. Reid*, 308 *Ky.* 348, 214 *S.W.*2d 584 (1948) (grandfather clause relating to qualifications at time of passage of veterinarian licensing act but passed thirty years later held valid). Since the date of passage of the amendment to the Health Care Facilities Planning Act does not affect its operation, this date is not material to the issues presented. Neither the plaintiff nor *amicus* contends otherwise.

Beneficiaries of grandfather clauses being exempt from a regulatory scheme created under the State's police power are not within the ambit of all requirements of that scheme.[1] Grandfather clauses reflect the legislative policy that the new regulatory process shall be effective prospectively. Since that legislative policy may have a conceivably rational basis, grandfather exclusions are not invidious per se and violative of equal protection. See *Affiliated Distillers Brands Corp. v. Sills*, 56 *N.J.* 251 (1970), mod. on other grounds 60 *N.J.* 342 (1972). The question from an equal protection viewpoint is whether there is a justifiable basis for the discrimination. A classification will not be set aside if any state of facts reasonably may be conceived to justify it. *McGowan v. Maryland*, 366 *U.S.* 420, 81 *S.Ct.* 1101, 6 *L.Ed.*2d 393 (1961). If there is a conceivable legitimate purpose for the grandfathering, the legislative action will be upheld.

Examples supporting grandfather clauses against equal protection attacks are bountiful. In *Independent Elec. Ass'n v. N.J. Bd. of Exam.*, 54 *N.J.* 466 (1969), this Court upheld a grandfather clause that excused those who had been engaged in the electrical contracting business for at least six years prior to the effective date of a licensing statute from taking an examination before being licensed as an electrician. In testing the reasonableness of the classification, we adhered to the doctrine

---

[1] We are not concerned herein with classifications involving fundamental personal rights or inherently suspect distinctions such as race or alienage.

that the Legislature has, under fundamental principles, an especially wide discretion in determining what requirements it will impose in such a clause. [*Id.* at 478]

We also quoted approvingly from the New York Court of Appeals opinion in *Wasmuth v. Allen,* 14 *N.Y.*2d 391, 398, 252 *N.Y.S.*2d 65, 70, 200 *N.E.*2d 756, 760 (1964), app. dism. 379 *U.S.* 11, 85 *S.Ct.* 86, 13 *L.Ed.*2d 23 (1964):

"Nothing turns on the circumstance that the Legislature excused under the grandfather clause some and not others from passing the basic subject test." [54 *N.J.* at 478]

The clause was upheld because of a "practical necessity" when a trade is initially licensed and because of the legislative judgment involved in setting the precise perimeters of the excepted class. *Id.* at 477–478.

Grandfather clauses have survived equal protection attacks when the excepted class consists of an existing business. In *United States v. Maher,* 307 *U.S.* 148, 59 *S.Ct.* 768, 83 *L.Ed.* 1162 (1939), the Court implicitly upheld a grandfather clause in the Motor Carrier Act excluding common carriers from proving requirements for a certificate of need for routes previously served. In *New Orleans v. Dukes,* 427 *U.S.* 297, 96 *S.Ct.* 2513, 49 *L.Ed.*2d 511 (1976), the Supreme Court upheld a grandfather provision exempting two vendors from the ban of an ordinance on pushcart selling because the "city could reasonably decide" that the exempted vendors "had themselves become part of the distinctive character and charm" of the French Quarter. *Id.* at 305, 96 *S.Ct.* at 2517, 49 *L.Ed.*2d at 518. The Court stated that "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–304, 96 *S.Ct.* at 2516–2517, 49 *L.Ed.*2d at 517.

Similarly, provisions in zoning ordinances that permit continuance of a nonconforming use have been held valid. See *Belleville v. Parrillo's, Inc.,* 83 *N.J.* 309 (1980); *United Advertising Corp. v. Borough of Raritan,* 11 *N.J.* 144 (1952). For other cases in which validity of nonconforming uses was upheld see cases cited in Annotation, "Exception of existing buildings or busi-

nesses from statute or ordinance enacted in exercise of police or license taxing power, as unconstitutional discrimination," 136 *A.L.R.* 207, 216–219 (1942).

Tested by these precepts, the grandfather clause in question satisfies traditional equal protection criteria. The Legislature decided that a prerequisite to an exemption was an appropriation of funds, in accordance with *N.J.S.A.* 44:5–1 to 44:5–10, by a municipality with no hospital located within its borders for the purpose of constructing a hospital. The primary thrust of these sections authorizing appropriations is to provide facilities for the indigent sick within the municipality. In addition only a nonprofit corporation which had acquired land within the municipality was eligible. Under all these circumstances the nonprofit corporation would have taken certain overt steps—formation, fund raising, expenditures and acquisition of land. Furthermore, a governmental decision would have already been made that a hospital was needed within the municipality to care for its poor and indigent. The Legislature accepted the judgment of the municipality that a hospital is needed within its borders that will presumably be more readily accessible to all members of the community including the poor.

The Legislature has seen fit in its wisdom and judgment to excuse this exempted class from the requirements of a certificate of need. It is the Legislature, not alone the courts, that determines the policies which foster the general welfare of the public. Its prudence is not for us to judge. *New Jersey Association on Correction v. Lan*, 80 *N.J.* 199, 211 (1979).

Unlike most other classification cases, the argument is made that the differences within the exempted class make similar treatment inappropriate. Neither plaintiff nor defendant requires a certificate of need for the initial hospital facility. Thus, plaintiff seeks to deny defendant a benefit that plaintiff itself enjoys. Moreover, plaintiff argues that it is inequitable to require it to obtain a certificate of need to construct additional facilities when Brick need not do so with respect to the hospital

to be built. In other words, plaintiff contends that expansion of its facilities and Brick's initial facility should be included within the same category.

The Legislature exercised broad discretion when it defined the class and in the absence of arbitrariness its decision should be upheld. The policy excluding existing hospitals and proposed facilities when need has been determined by a municipality and when funds have been raised and land acquired is a legislative recognition of reliance made in good faith on the state of the law which existed prior to the effective date of the Act. See *Affiliated Distillers Brands Corp. v. Sills*, 56 *N.J.* at 263. Though these hospitals may not fulfill all the stated purposes of the Act, at least those in the category of section 7.1 have received a governmental declaration of need in the community. This declaration is in keeping with the spirit of the grounds for issuance of a certificate of need, namely the necessity "to provide health care in the area to be served." *N.J.S.A.* 26:2H–8. Only one hospital is permitted under *N.J.S.A.* 44:5–10.2 within a municipality. It could be argued that only section 7.1 institutions should have been exempted from the certificate of need requirement. This group fits within the general legislative scheme that only hospitals that are needed in an area should be permitted. However, the Legislature has also seen fit to include existing hospitals and those under construction. The legislative intent in this respect was addressed to the impact of future hospital development. The exercise of this discretion accords with the traditional principle that the Legislature may recognize degrees of harm and correct the situation which it considers most appropriate. In *Katzenbach v. Morgan*, 384 *U.S.* 641, 86 *S.Ct.* 1717, 16 *L.Ed.*2d 828 (1966), the Court restated the principle in this fashion:

> [W]e are guided by the familiar principles that a "statute is not invalid under the Constitution because it might have gone farther than it did," *Roschen v. Ward*, 279 U.S. 337, 339, [49 *S.Ct.* 336, 336,] 73 *L.Ed.* 722, 729, that a legislature need not "strike at all evils at the same time," *Semler v. Dental Examiners*, 294 *U.S.* 608, 610, [55 *S.Ct.* 570, 571] 79 *L.Ed.* 1086, 1089, and that "reform may take one step at a time, addressing itself to the phase of the problem which seems

most acute to the legislative mind," *Williamson v. Lee Optical Co.*, 348 *U.S.* 483, 489, 75 *S.Ct.* 461, 465, 99 *L.Ed.* 563, 573 [384 *U.S.* at 657, 86 *S.Ct.* at 1727, 16 *L.Ed.2d* at 839]

We hasten to point out that the defendant will be subject to the same panoply of regulation as the plaintiff and other hospitals, whether within the grandfather exemption or not, in all other respects. Therefore, defendant, too, will require a license to operate and certificates of need for expansion, will be subject to reporting and accounting requirements and will have its rates reviewed and fixed in the same manner as other hospitals.

## II.

Plaintiff also contends that the grandfather provision, *N.J. S.A.* 26:2H–7.1, violates the state constitutional interdiction against special legislation. The provision reads:

[t]he Legislature shall not pass any private, special or local laws:

. . . .

(8) Granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever. [*N.J. Const.* (1947), Art. IV, § VII, par. 9(8)]

However, the particular determinant of a special law is the appropriateness of the objects which it excludes. This well-accepted standard is found in *Budd v. Hancock*, 66 *N.J.L.* 133 (Sup.Ct.1901), which reads as follows:

A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. [*Id.* at 135]

The Court has restated the principle on several occasions. In *Roe v. Kervick*, 42 *N.J.* 191, 233 (1964), we said:

A law is "general" (1) if the class of subjects established, recognized or regulated is distinguished by characteristics sufficiently marked and important to make it a class by itself, and (2) if it encompasses all of the subjects which reasonably belong within the classification, and does not exclude any which naturally belong therein.

So, too, in *Harvey v. Essex Cty. Bd. of Freeholders*, 30 *N.J.* 381, 389 (1959), we stated:

In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. *Budd v. Hancock,* 66 *N.J.L.* 133, 135–136 *(Sup.Ct.* 1901). If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. In *Van Riper v. Parsons,* 40 *N.J.L.* 1, 9 *(Sup.Ct.* 1878) the court pointed out that local and special laws rest on a false or deficient classification in that "their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." See also *City of Passaic v. Consolidated Police, etc., Pension Fund Commission,* 18 *N.J.* 137, 146 (1955); *Sherwood v. Bergen-Hackensack, etc., Authority,* 24 *N.J.Misc.* 48, 53–54 *(Sup.Ct.* 1946), affirmed, 135 *N.J.L.* 304–306 *(E. & A.* 1946). With this distinction between a special and a general law in mind, the question is whether any appropriate person is excluded to which the law, but for its limitations, would apply. *Koons v. Board of Com'rs of Atlantic City,* 134 *N.J.L.* 329, 333 *(Sup.Ct.* 1946), affirmed *per curiam,* 135 *N.J.L.* 204 *(E. & A.* 1947); *In re Freygang,* 46 *N.J.Super.* 14, 23 *(App.Div.* 1957), affirmed, 25 *N.J.* 357 (1957).

An analysis similar to that used in the equal protection model has traditionally been applied to determine if legislation is proscribed as special. See *Robson v. Rodriguez,* 26 *N.J.* 517, 526 (1958) ("The test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws."). As we stated more recently in *Vreeland v. Byrne,* 72 *N.J.* 292, 299 (1977): "The test, of course, is whether the classification is reasonable, not arbitrary, and can be said to rest upon some rational basis justifying the distinction."

 The propriety of exclusions must be examined utilizing the principles generally applicable to equal protection. Thus the Legislature has wide discretion in determining the perimeters of a classification, *Harvey v. Essex Cty. Bd. of Freeholders,* 30 *N.J.* at 390, distinctions may be made with substantially less than mathematical exactitude, *Lane Distributors, Inc. v. Tilton,* 7 *N.J.* 349, 358–359 (1951), and an adequate factual basis for the

legislative judgment is presumed to exist, *Burton v. Sills*, 53 *N.J.* 86, 95 (1968), app. dism. 394 *U.S.* 812, 89 *S.Ct.* 1486, 22 *L.Ed.2d* 748 (1969). We must also be mindful of the strong presumption in favor of constitutionality, *David v. Vesta Co.*, 45 *N.J.* 301, 315 (1965), and the traditional judicial reluctance to declare a statute void, a power to be delicately exercised unless the statute is clearly repugnant to the Constitution. *Brunetti v. New Milford*, 68 *N.J.* 576, 599 (1975); *Harvey v. Essex Cty. Bd. of Freeholders*, 30 *N.J.* at 388; *Gangemi v. Berry*, 25 *N.J.* 1, 10–11 (1957).

In section 7.1 the Legislature added to the group of hospitals existing or under construction on August 21, 1971. As we have seen the additional category included nonprofit corporations that proposed to construct a hospital in a municipality that had decided that a hospital was necessary for the treatment and care of its indigent. The municipal decision must have been buttressed by an appropriation of municipal funds, and the corporation must have acquired a site for that purpose.

As discussed above, the Legislature could justifiably omit institutions that did not have a municipal determination of need, supported by an appropriation, for a hospital within its borders to care for its inhabitants. Plaintiff's contention that an institution that has raised all its funds by voluntary contributions should be within the class overlooks the fact that there would have been no public decision of a governmental agency of the need for the facility. Moreover, the governmental determination does not represent some vague sentimental approval, but is supported by the use of taxpayers' funds by officials accountable to the public.

Another argument advanced by plaintiff is that the condition that land must be located within the municipality is unreasonable. Here again the restriction to those situations where the site is within the municipality accords with the need to service its inhabitants generally and the poor and indigent in particular.

Obviously, distance plays a role in the location of a hospital. One reason leading to the formation of the defendant corporation in 1968 was the distances inhabitants had to travel to a hospital. This factor is likely to weigh more heavily on the poor and indigent, and it is their care which must underlie and justify the municipal appropriation under *N.J.S.A.* 44:5–10.2. Accordingly, it is not unreasonable for the Legislature to determine that a governing municipal body, which is uniquely capable of evaluating the community's need, signify that need by appropriating funds for a hospital to be constructed within its borders.

 Exclusion of institutions that have not acquired any land is related to the reliance factor accommodated by the Legislature through prospective application of the Act. As indicated previously, a requirement of reliance on law prior to the Health Care Facilities Planning Act justifies a grandfather classification. The nature and extent of that reliance supportive of inclusion in the excepted class are peculiarly matters for legislative judgment.

 The fact that only one entity that meets the specific provisions of the amendment has been identified thus far[2] does not render legislation special. The test is, as we have seen, whether any health care facilities have been excluded that should have been included. Irrespective of whether any other hospital fits into the category, it is settled that a class of one is constitutionally permissible. *Bayonne v. Palmer,* 90 *N.J.Super.* 245, 284 (Ch.Div.1966), aff'd 47 *N.J.* 520 (1966) ("The mere fact that a class will embrace but one entity which is distinct from all others, does not in itself mean that legislation affecting the one entity must be regarded as a special, private or local law"); *Budd v. Hancock,* 66 *N.J.L.* at 136 ("If . . . this act is special

---

[2] At oral argument another comparable institution was said possibly to exist.

only in the sense that its object is single, the question of its special character in a legal sense does not arise").

Moreover, the classification as applied rests upon a rational basis relevant to the purpose and object of the Act. See *Vreeland v. Byrne*, 72 *N.J.* 292 (1977). Enabling this defendant's hospital to exist furthers a purpose of the Act for it is a step in the direction of providing "for the protection and promotion of the health of the inhabitants of the State." *N.J.S.A.* 26:2H–1. It is consonant with the statutory purpose of prospectivity reflected by elimination of certificates of need for existing hospitals or those which had attained the planning stage. However, *all* health care facilities are brought under the umbrella of mandatory compliance with hospital operational requirements and other safeguards in the Act, including certificates of need for any future expansion. *Cf. Vreeland v. Byrne*, 72 *N.J.* 292 (1977) (future impact of the legislation resulted in different pay for individuals performing the same services; the legislation as applied was held special legislation).

Our statement in *McKenney v. Byrne*, 82 *N.J.* 304, 320 (1980), is equally applicable here:

> The statute is not a special or local law because the classification is constitutionally reasonably, all within the group have characteristics which are sufficiently identifiable so that they constitute a class, and none has been excluded which should have been encompassed within the classification.

The judgment of the Appellate Division is reversed.

*For reversal*—Justices SULLIVAN, SCHREIBER and HANDLER—3.

*Dissenting*—Justices PASHMAN and CLIFFORD—2.

PASHMAN, J., dissenting.

Because I believe that *N.J.S.A.* 26:2H–7.1 is unconstitutional special legislation, I respectfully dissent.

*N.J. Const.*, Art. IV, § 7, par. 9(8) prohibits the Legislature from ·passing

> ... any private, special or local laws ... [g]ranting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever.

This limitation on legislative powers has a firm historical foundation and grew out of a need to curb abuses peculiar to the legislative process. As a leading commentator has explained,

> the legislative process lacks the safeguards of due process and the tradition of impartiality which restrain the courts from using their powers to dispense special favors. Over the course of time, as a result, the propensities of legislatures to indulge in favoritism through special legislation developed into a major abuse of governmental power.
>
> As the bulk of special laws grew demands for reform became insistent, and constitutional prohibitions were enacted to limit the practice of enacting special legislation and to achieve greater universality and uniformity in the operation of statute law in respect to all persons. [2 Sutherland, *Statutory Construction* § 40.01 at 135 (4th ed. 1973)]

The statute challenged in this case illustrates the kind of "favoritism" that the constitutional prohibition should prevent: the passage of legislation clearly intended to benefit one person only and without regard to similarly situated persons. The challenged statute provides:

> *Any nonprofit* entity chartered by the State of New Jersey as a nonprofit corporation pursuant to Title 15 of the Revised Statutes, *which had been so chartered and had acquired land for the purpose of constructing a hospital* prior to the effective date of the act to which this act is a supplement, and *when the land so acquired by such nonprofit corporation is located within a municipality that has provided an appropriation for the construction of a health care facility* as authorized by P.L. 1954, c. 266 (C. 44:5–10.2), then the proposed hospital of such nonprofit corporation shall be exempt from the requirement of section 7 of P.L. 1971, c. 136 (C. 26:2H–7) relating to a certificate of need. [*N.J.S.A.* 26:2H–7.1 (emphasis added)]

It is apparent that the statute, so hedged with qualifications, was drafted with only Brick Township Hospital in mind. This conclusion is squarely supported by the legislative history of the statute. The relevant Senate committee statement reads in its entirety as follows:

> This bill is narrowly drawn to permit certain proposed health care facilities exemption from the requirement to obtain a certificate of need under the Health Care Facilities Planning Act. The bill would have the effect of enabling a hospital to be built in Brick Town, Ocean county.
>
> In releasing this bill the committee acknowledges the need for a particular hospital whose construction was prohibited by the Statewide Health Coordinating Council. However, this hospital represents a unique situation and committee approval of this legislation should not be construed as an attempt to undermine the State health planning process, which has functioned so well in New Jersey through the efforts of dedicated health professionals and lay persons. [Senate Institutions, Health and Welfare Committee, Statement to Assembly No. 369, June 1, 1978]

I fully agree with the majority's statements of the governing principles of law: that the test of a special law is "the appropriateness of the objects which it excludes," *ante* at 445, and that "a class of one is constitutionally permissible," *ante* at 448. However, the Legislature is not constitutionally permitted to enact a law that *unreasonably* excludes hospitals similarly situated to the one covered by the statute. The Committee Statement reveals that the Legislature has not considered whether other hospitals in situations similar to that of Brick Township Hospital should also be exempted from the certificate of need requirement. There may be hospitals which are funded by municipal appropriations but which are located in municipalities that have not helped pay for the construction, and hospitals funded by county appropriations rather than municipal appropriations.[1] Whatever policy reasons led the Legislature to conclude that a hospital like Brick Township Hospital should be exempt from the certificate of need requirement necessarily would apply to hospitals in those classes as well. But the Legislature chose to limit the terminology of the exemption to

---

[1] In this regard, it should be noted that *N.J.S.A.* 44:5–10.2, which is relied upon in the challenged statute, authorizes any municipality which has no municipally maintained hospital to appropriate funds for the construction of "any hospital or hospitals located in the municipality *or in any other municipality in the county*" (emphasis added).

It should also be observed that *N.J.S.A.* 44:5–14 permits *counties* to appropriate money for the construction of hospitals "located in the county."

facts peculiar to Brick Township Hospital. This choice amounts to special legislation prohibited by the State Constitution.

The facts of the case strongly support the conclusion that *N.J.S.A.* 26:2H–7.1 is special legislation. As the majority acknowledges, *ante* at 436–37, Brick Township Hospital initially tried, without success, to obtain an exemption from the certificate of need requirement through proper administrative channels. This fact, taken together with the unnaturally narrow terms of the statute and the revealing legislative statement quoted above,[2] all too strongly suggest that *N.J.S.A.* 26:2H–7.1 was enacted solely to enable Brick Township Hospital to circumvent statutory and administrative requirements which it was otherwise unable to meet.

The wisdom of state-wide planning for health care facilities, or Brick Township's need for its own hospital are, of course, irrelevant to this case. What I fear is that the decision of the Court today will be taken as a signal to any individual aggrieved or inconvenienced by a statute to seek special, effectively "private" legislative dispensation from coverage by the statute. This is what the constitutional prohibition of special legislation was designed to avoid.

Because I would hold *N.J.S.A.* 26:2H–7.1 to be unconstitutional special legislation which violates *N.J.Const.*, Art. IV, § 7, par. 9(8), I express no views as to whether it also violates the Equal Protection Clause.

Justice CLIFFORD joins in this dissenting opinion.

---

2 I also note that the Governor signed the act into law at the site of the proposed hospital in Brick Township, at which time he is reported to have said that although he favored the certificate of need requirement, he approved of the exemption of Brick Township Hospital from this requirement.