580 A.2d 1087

JEANETTE DARMETKO, PETITIONER–APPELLANT, v. ELECTRON TECHNOLOGY AND STATE OF NEW JERSEY, RESPONDENTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 18, 1990—Decided October 2, 1990.

Before Judges PRESSLER and BAIME.

*Charles J. Farley, Jr.* argued the cause for appellant (*Farley & Farley*, attorneys; *Charles J. Farley, Jr.* on the brief).

*Stephen A. Geffner* argued the cause for respondent Electron Technology (*Gallo, Geffner, Fenster, Turitz & Harraka*, attorneys; *Richard J. Grossi* on the letter-brief).

*Michael O'Brien,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *Michael O'Brien* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

The sole question presented by this appeal concerns the constitutionality of *N.J.S.A.* 34:15–36. That statute requires injured workers to be seventy-five percent disabled before factors other than physical or neuropsychiatric impairments are considered in the determination of permanent total disability. Petitioner contends that the statutory restriction runs afoul of due process and equal protection. We disagree and affirm.

Petitioner, a 63 year old factory worker, fell while performing her employment duties, fracturing her right hip. During her hospitalization, petitioner underwent a total hip replacement. Following her discharge from treatment, petitioner contacted her employer and was told that she had been replaced.

The accident and surgery have substantially impaired petitioner's physical abilities. She is unable to bend down, handle heavy objects, walk moderate distances or stand for a lengthy period of time. Petitioner experiences pain in her limbs and is unable to perform many household chores.

Petitioner's attempts to obtain employment have been futile. All of her work experience has been in a factory setting and her education is extremely limited. A rehabilitation counselor testified that petitioner is unemployable in the current market by reason of her lack of education, training and job related skills coupled with the physical and psychological impairments caused by the accident and surgery. At present, petitioner is collecting unemployment, social security and pension benefits.

■ The compensation judge awarded 55 percent partial permanent disability.[1] The judge noted, however, that had it not been for the statutory restriction contained in *N.J.S.A.* 34:15–36, he "would have [had] no hesitancy in declaring [petitioner] eligible for total disability payments under the odd lot doctrine...."

*N.J.S.A.* 34:15–36 reads in pertinent part as follows:

"[d]isability permanent in quality and total in character" means a physical or neuropsychiatric total permanent impairment caused by a compensable accident or compensable occupational disease where no fundamental or marked improvement in such condition can be reasonably expected.

Factors other than physical and neuropsychiatric impairments may be considered in the determination of permanent total disability, where such physical and neuropsychiatric impairments constitute at least 75% or higher of total disability.

All parties agree that this section precludes consideration of such factors as age, education, intelligence, training, communication skills and other personal and cultural deficits unless the physical and neuropsychiatric impairments suffered by the injured worker constitute 75 percent of his or her total disability. The clear intent of the Legislature was to limit application of the odd lot doctrine.

In New Jersey, the odd lot doctrine had its genesis in *Kalson v. Star Elec. Motor Co.*, 15 *N.J.Super.* 565, 83 *A.*2d 656 (Cty.Ct.1951), *aff'd*, 21 *N.J.Super.* 15, 90 *A.*2d 514 (App.Div. 1952). The doctrine "imposes upon the employer responsibility for a worker whose unemployability on a regular basis in a reasonably stable job market results not only from the direct

---

[1] Petitioner does not challenge the judge's findings with respect to the extent of her physical and neuropsychiatric impairments. Petitioner's doctor found that she had orthopedic disability of 50% partial total and neuropsychiatric disability of 20% partial total. The employer's experts found that petitioner had orthopedic disability of 17½% partial total and neuropsychiatric disability of 29% partial total. The compensation judge determined that the orthopedic and neurologic disability was 45% and the psychiatric disability was 10%. The findings made by the judge could reasonably have been reached on sufficient credible evidence present in the record. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965).

medical consequences of a work-connected accident but also from the combination of those [ramifications], in themselves less than totally disabling, with the worker's personal handicaps." *Crooms v. Central Steel Drum Co.*, 156 *N.J.Super.* 471, 473, 384 *A.2d* 155 (App.Div.1978). Under the doctrine, the worker is viewed in the perspective of the competitive market place, *Rodriguez v. Michael A. Scatuorchio, Inc.*, 42 *N.J.Super.* 341, 353, 126 *A.2d* 378 (App.Div.1956), certif. den., 23 *N.J.* 140, 128 *A.2d* 309 (1957), where his inability to sell his labor may be traceable to his cultural background superimposed upon his physical disability. *Barbato v. Alsan Masonry*, 64 *N.J.* 514, 528, 318 *A.2d* 1 (1974); *see also Lightner v. Cohn*, 76 *N.J.Super.* 461, 468, 184 *A.2d* 878 (App.Div.1962), certif. den., 38 *N.J.* 611, 186 *A.2d* 308 (1962). We need not retread upon ground so thoroughly covered by our Supreme Court in its decisions concerning the subject. *See Lewicki v. New Jersey Art Foundry*, 88 *N.J.* 75, 84, 438 *A.2d* 544 (1981); *Germain v. Cool–Rite Corp.*, 70 *N.J.* 1, 9, 355 *A.2d* 642 (1976); *Oglesby v. American Dredging Co.*, 64 *N.J.* 538, 547–48, 318 *A.2d* 14 (1974); *Zanchi v. S & K Const. Co.*, 63 *N.J.* 331, 332, 307 *A.2d* 561 (1973). We merely note that the doctrine has been applied in a wide variety of factual settings to protect a worker who finds himself in an "odd-lot" of the labor market by reason of the effects of a work-related accident or injury.

■ The evolution of the odd lot doctrine took place against the backdrop of legislative silence. However, that silence was broken when the Legislature adopted major revisions of the Workers' Compensation Act which became effective in 1980. In a Joint Legislative Statement, it was said:

[t]his bill is a revision of New Jersey's Workers' Compensation Law and would make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to employment.

The bill would put significantly more money into the hands of the more seriously injured workers while providing genuine reform and meaningful cost containment for New Jersey employers from unjustified workers' compensation

costs that are presently among the highest in the nation. (statement to Senate Bill No. 802 and Assembly Bill No. 840, Nov. 13, 1979).

In the Statement, the Legislature expressed its intent to "restrict[ ] the 'odd lot' doctrine by redefinition of permanent total disability." *Ibid.* The operative language of *N.J.S.A.* 34:15–36 clearly and unmistakably fulfills that legislative design.

In several of our decisions, we have said that the odd lot doctrine is based upon "enlightened policy." *See, e.g., Padilla v. Concord Plastics, Inc.,* 221 *N.J.Super.* 301, 307, 534 *A.*2d 428 (App.Div.1987), *aff'd o.b.,* 113 *N.J.* 508, 551 *A.*2d 534 (1988). However, we cannot fairly conclude that the statutory restriction contained in *N.J.S.A.* 34:15–36 is unreasonable, arbitrary or capricious, or that the means selected by the Legislature does not bear a substantial nexus to the object sought to be obtained. *See Taxpayers Ass'n of Weymouth v. Weymouth Tp.,* 80 *N.J.* 6, 37, 364 *A.*2d 1016 (1976), *cert. denied, Feldman v. Weymouth Tp.,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977); *see also Troy Hills Village v. Township Council of Parsippany–Troy Hills Tp.,* 68 *N.J.* 604, 633, 350 *A.*2d 34 (1975); *Wiramal Corp. v. Director of Div. of Taxation,* 36 *N.J.* 201, 212, 175 *A.*2d 631 (1961); *DeMonaco v. Renton,* 18 *N.J.* 352, 360, 113 *A.*2d 782 (1955). Nor can it be said that *N.J.S.A.* 34:15–36 discriminates against the elderly, as petitioner urges here. The benefit of the odd lot doctrine was not available exclusively to older people. While the impact of the statutory limitation will undoubtedly be felt by the elderly, the restriction is not predicated upon age.

We find that the statutory limitation placed upon application of the odd lot doctrine "bears a reasonable and just relationship to the general object of the legislation," cost containment. *Demonaco v. Renton,* 18 *N.J.* at 360, 113 *A.*2d 782. That such an objective arguably could be served more wisely by some other means is irrelevant for due process and equal protection purposes. The Legislature is not compelled to formulate a plan that seems most rational or sound to the court. *State v. Corbitt,* 74 *N.J.* 379, 403, 378 *A.*2d 235 (1977), *aff'd,* 439 *U.S.*

212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1978). "It is sufficient if *any* rational basis relevant to a proper purpose underlies the classification and the attendant treatment of the classes affected." *Ibid. See also Paul Kimball Hosp. v. Brick Tp. Hosp.,* 86 *N.J.* 429, 441, 432 *A.*2d 36 (1981). It is the legislative branch, not the judiciary, that determines the policies which advance the general welfare. *Paul Kimball Hosp. v. Brick Tp. Hosp.,* 86 *N.J.* at 441, 432 *A.*2d 36. "Its prudence is not for us to judge." *Id.* at 443, 432 *A.*2d 36. "[I]t is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *New Orleans v. Dukes,* 427 *U.S.* 297, 303–04, 96 *S.Ct.* 2513, 2517, 49 *L.Ed.*2d 511, 517 (1976).

We repeat the admonition expressed in *Williams v. Western Electric Co.,* 178 *N.J.Super.* 571, 429 *A.*2d 1063 (App.Div.1981), that "[c]ases such as this one must be approached with caution." *Id.* at 585, 429 *A.*2d 1063. We have no alternative but to resist the urge to aid the plight of the injured worker by substituting our sympathy for the Legislature's clearly expressed requirements.

Affirmed.