217 N.J. Super. 560 (1985)
526 A.2d 708
DANNY MARGARITONDO, APPELLANT-CROSS-RESPONDENT,
v.
STAUFFER CHEMICAL COMPANY, RESPONDENT-CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1985.
Decided March 28, 1985.
*561 Before Judges DREIER and SHEBELL.
Lester S. Goldblatt argued the cause for appellant (Wysoker, Sherman, Glassner & Weingartner, attorneys; Rick R. Solomon, on the brief).
Julius J. Feinson argued the cause for respondent (Newman, Herman, Saltman, Levitt & Feinson, attorneys).
The opinion of the court was delivered by SHEBELL, J.A.D.
Danny Margaritondo appeals from a Workers' Compensation decision denying him psychiatric disability. He alleged this disability was related to a back injury for which he was award "a disability of 25 per cent of partial permanent, orthopedic and neurologic, for post[-]operative state for lumbar laminectomy and discectomy at L5-S1 with recurrent sciatic neuritis." His employer Stauffer Chemical Company appeals the judge's disallowance of credit for a 1973 Workers' Compensation award for "a lumbosacral sprain with myositis." We reverse on both issues.
On April 16, 1982 while employed as an electrician Margaritondo felt pain in his back when lifting, with two coemployees, a motor weighing two to three hundred pounds. He worked with pain for a few days but went to the company doctor when the pain spread. He was seen by the company doctor two or three times, sent for x-rays, and referred to another physician. After being treated briefly by the new physician he was admitted to the hospital during the early morning hours when the pain became worse. While at the hospital he was examined, x-rayed and an EMG study was done. Surgery was performed for removal of an extruding disc and he was discharged from the hospital on May 9, 1982 after thirteen days confinement. He received follow-up treatment consisting of examinations, *562 physical therapy, heat and exercises, and was compelled to wear a back brace when subjecting his back to stress. On September 13, 1982 he returned to work having gained approximately sixty pounds. His overtime work was dramatically decreased and he was assigned to light duty and instructed not to lift more than thirty-five pounds.
Margaritondo complained at trial that his back bothered him a lot; he got sharp pains in the right leg; some nights pain kept him awake; his leg goes to sleep at times; he gets pain in his lower back; he gets headaches; it takes him a while to straighten up after he has been seated in a chair for a long period of time; he walks a little bit bent over; weather affects the amount of pain he feels; he has to take aspirin and lie down for a few hours to relieve his headaches; he wears his back brace a couple of times a week when he expects more stressful activity than usual; he no longer played with his two children except for "sit down type games"; he has been hard to get along with and irritable since the accident; he can no longer work on his car or perform other chores around the house; he no longer bowls, and camping was more difficult than it was before the accident.
Petitioner was examined by Dr. Jack Sall for the purpose of evaluating his disability. Dr. Sall diagnosed a post-operative state for lumbar laminectomy and discectomy at L5-S1 with recurrent right sciatic neuritis. He evaluated disability at 40 per cent of total inclusive of all the disability he found. Dr. Sall found that the sciatic neuritis was a manifestation of the nerve root irritation secondary to the pressure present following the disc herniation and that it was not totally relieved by the operative procedure. Petitioner also called as a witness Dr. Peter Crain, a Diplomate of the American Board of Psychiatry and Neurology and a Diplomate of the Board of Forensic Psychiatry. Dr. Crain found that the right ankle jerk was absent and the left ankle jerk was "2 out of 4 possible grades." He received an extensive array of complaints from the petitioner and concluded that in addition to the diagnosis of right lower *563 extremity neuropothy that there was a "depressive reaction to the accident of April 6, 1982 and sequelae." He estimated the neurological disability to be 17 1/2 per cent of total and a psychiatric disability of 20 per cent of total.
The employee was examined for his employer by Dr. G.E. Troncoso who was certified in family practice and did not specialize in orthopedics or have Board certification in orthopedics. The doctor "estimated a 12 per cent of total disability." He did not know at the time of his examination that the employee had had a prior award of 2 1/2 per cent of partial total for a prior back injury. He said that with that knowledge his estimate included the prior award. The employer also called as an expert witness Dr. Ivan R. Dressner, a Diplomate of the American Board of Psychiatry and Neurology, who estimated neurological and psychiatric disabilities at 5 per cent of partial total. When asked whether he could give any finer break down between the neurological condition and the psychiatric condition he stated:
Understanding the limitations of these things, I would say the neurologic overlapping the orthopedic is probably three percent, and the psychiatric, for his chronic discomfort, 2 per cent.
On further examination he affirmed that the psychiatric disability would be separate from the neurologic disability, which he felt overlapped the orthopedic finding.
The Judge of Compensation in denying an award for psychiatric disability stated:
I had an opportunity to observe the petitioner testify in court. I have had an opportunity to observe many individuals, many of whom are seriously depressed and have psychiatric disability. I am not the expert, but I have had experts here to testify, and they had differences of opinion. Frankly, I had an opportunity to see and be close to the petitioner as he testified in court, and I found no psychiatric disability.
While the experts may have disagreed as to the extent of psychiatric disability, they did not disagree as to its presence. A judge of compensation of course is not bound by the conclusionary opinions of medical experts; however, he must give consideration to such testimony and evaluate it based upon the doctor's qualifications and demeanor, the inherent trustworthiness *564 of the testimony, and the quality of the underlying examination upon which the opinions are based. See Barbato v. Alsan Masonry, 64 N.J. 514, 523, 529 (1974). The findings of judges of compensation are entitled to deference; however, such findings must be supported by articulated reasons grounded in the evidence. Lewicki v. New Jersey Art Foundry, 88 N.J. 75, 88-90 (1981).
Here, the Judge of Compensation failed to articulate his reasons for rejecting the testimony of the two psychiatric experts that Margaritondo was suffering from permanent psychiatric disability which was capable of evaluation. We think it clear that the record does not support a finding that petitioner was not suffering from psychiatric disability. It must be recognized that respondent's medical expert found permanent psychiatric disability even though he concluded that the petitioner was not suffering from depression. The Judge of Compensation stated: "Suffice it to say, I accepted the testimony of Dr. Dressner to the fact that petitioner was not suffering from depression." That however is not a sufficient finding of fact to exclude Dr. Dressner's estimate of psychiatric disability inasmuch as he found psychiatric disability notwithstanding his conclusion that petitioner was not suffering from depression. The judge's findings, being based upon his observations at trial, were made without sufficient foundation to support his conclusion as to petitioner's psychiatric state. There was inadequate testimony concerning whether or not the employee was on medication, as well as a failure to explore the presence or absence of the various factors that could trigger petitioner's psychiatric disability.
We are satisfied that the interests of justice are best served by our exercising our original jurisdiction to determine petitioner's psychiatric disability on the basis of the record established in the Workers' Compensation Court. R. 2:10-5. We find that the employee, because of his injury and the substantial orthopedic and neurological permanent impairment he sustained, suffered mental consequences resulting in permanent *565 psychiatric disability. He felt like a damaged individual, was fearful of pushing himself and unable to perform the quality or quantity of work that he had previously. It affected his life at home as well and resulted in the need for counseling at a mental health center. Our review of the record satisfies us that this employee has sustained permanent psychiatric disability to the extent of 10 per cent of the partial total.
Both parties on appeal concede that the trial judge erred in not permitting credit for the employee's previous award of 2 1/2 of partial total compensation for his prior back injury. See Abdullah v. S.B. Thomas, Inc., 190 N.J. Super. 26, 32-35 (App. Div. 1983). The parties also agreed at oral argument before us on the method of calculation of the credit. Stauffer shall receive credit against the employee's award to the extent of 2 1/2 per cent of the partial total or a period of 15 weeks to be calculated at the 1982 rate of $58 per week totaling $870.
We reverse and remand to the Division of Workers' Compensation for entry of judgment in accordance with our award of psychiatric disability to Margaritondo and for granting of the agreed upon credit to Stauffer.