DANNY MARGARITONDO, APPELLANT-CROSS-RESPONDENT, v. STAUFFER CHEMICAL COMPANY, RESPONDENT-CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 11, 1985—Decided March 28, 1985.
Remanded May 20, 1986—Submitted August 1, 1986.
Decided September 8, 1986.

Before Judges DREIER and SHEBELL.

*Wysoker, Glassner & Weingartner,* attorneys for appellant; *Lester S. Goldblatt,* on the letter-brief on remand.

*Newman, Herman, Saltman, Levitt and Feinson,* attorneys for respondent; *Julius J. Feinson,* on the letter-brief on remand.

The opinion of the court was delivered by

SHEBELL, J.A.D.

In our opinion of March 28, 1985, 217 *N.J.Super.* 560, we reversed the Judge of Compensation's denial of an award for psychiatric disability and found that the employee had sus-

tained permanent psychiatric disability to the extent of 10 percent of the partial total. Thereafter, the Supreme Court granted Stauffer Chemical Company's petition for certification, 104 *N.J.* 388, and summarily remanded the matter to this court for reconsideration in light of *Saunderlin v. E.I. DuPont Co.*, 102 *N.J.* 402 (1986).

It was held in *Saunderlin*, 102 *N.J.* at 408 that "the requirements of the statutory definition of permanent partial disability in *N.J.S.A.* 34:15–36 apply to ... claims of psychiatric disability, like those of physical disability, [and] must be based upon demonstrable objective medical evidence."

*Saunderlin* sets two "parameters" for determining "what constitutes demonstrable objective medical evidence of psychiatric as distinguished from physical disability." First, noting that "[r]equiring physical manifestations of psychiatric disability might blur if not obliterate" the distinction between psychiatric and physical disability claims, the Court held that there "need not be, objective medical evidence of physical disability." Second, the Court declared that "the distinction between objective and subjective contemplated by the Legislature is not between physical and mental (or body and mind) but between independent professional analysis and the bare statement of the patient." *Id.* at 411–412.

The requirement established by the Legislature "is to interpose a professional medical judgment between the subjective statement of the petitioner and the award of disability" and "not to collapse psychiatric disability into physical disability explicitly or implicitly." *Id.* at 412. The Court noted that any medical exam must begin with the subjective statement of the patient and that the extent and manner to which the professional analysis must go beyond that statement in order to constitute demonstrable objective medical evidence depends upon the nature of the disability. *Ibid.* Within the meaning of *N.J.S.A.* 34:15–36, "not only physical manifestations observable independently of the patient's statement but also descriptions of states

of mind discoverable only through that statement" are objective. 102 *N.J.* at 413–14. *Saunderlin* flatly rejected the mindset that "if it's not physical, it's not real." *Id.* at 414–415.

This 35 year old employee was out of work five months following surgery for removal of a herniated disc. His work activities are now restricted to lifting no greater than 35 pounds and he must avoid bending and stooping by order of the company doctor. He was high up on the list for overtime worked prior to the accident and since has fallen to the bottom of that list.

Dr. Peter M. Crain, a Diplomate of the American Board of Psychiatry and Neurology and also a Diplomate of the Board of Forensic Psychiatry since 1958, diagnosed the employee as suffering from a depressive reaction to the extent of 20 percent of the partial total. Dr. Crain found that the employee's depression resulted from the consequences of his back condition and explained that the man could not do things at home as he did before and this upset him, as well as his wife and family, and required family counseling; that he carried this condition to work in the sense that he was afraid of doing anything such as lifting anything heavy that could aggravate his back, and that he was aware he was not doing his share of the load and feels very uncomfortable about his relationship with his peers. The doctor observed that the employee's emotional expression was restrained. In addition to orthopedic and neurological complaints, the employee suffered from a pounding sensation over the suboccipital area of his head, intermittant headaches lasting two hours at a time, and faintness and lightheadedness. Dr. Crain pointed out that "this man feels like a damaged individual."

So too, the examining physician for the employer, also a Diplomate of the American Board of Psychiatry and Neurology, found psychiatric disability resulting from the employee's "chronic pain syndrome." The operating physician reported that the disc was one of the worst discs he had ever seen. The severity of the injury was such that despite surgery pain has

continued from the back down into the legs and there is impairment of nerve function in the right lower extremity diagnosed as a "neuropathy." He has also suffered a reflex loss. This father of two children gained approximately 60 pounds, going from 170 pounds to approximately 230 pounds. He complained of numbness every day in his right leg, that he does not play with the kids any more, that he is hard to get along with, that everything bothers him, that he cannot do things around the house and that he had to give up hobbies including bowling and camping.

The Judge of Compensation in denying the employee compensation for his psychiatric disability fell into the pitfall warned against in *Saunderlin:* he equated objective medical evidence of psychiatric disability with objective medical evidence of physical disability. 102 *N.J.* at 411. Both competent psychiatric experts independently discovered that the employee was suffering from a state of mind that constituted a mental disorder. Their determination was based upon sound professional medical judgment thereby constituting objective evidence of the employee's psychiatric disability under *N.J.S.A.* 34:15–36. *Id.* at 412–414.

Therefore, we reaffirm our decision and opinion of March 28, 1985.