288 N.J. Super. 359 (1996)
672 A.2d 719
FRANCISCO PEREZ, PETITIONER-APPELLANT,
v.
CAPITOL ORNAMENTAL, CONCRETE SPECIALTIES, INC., RESPONDENT-RESPONDENT,
v.
SECOND INJURY FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1995.
Decided March 11, 1996.
*362 Before Judges KEEFE, WEFING and A.A. RODRIGUEZ.
Gregg M. Hobbie argued the cause for appellant (Robert A. Olkowitz, attorney, on the brief).
Victor B. Matthews argued the cause for respondent Capitol Ornamental, Concrete Specialties, Inc.
Lois J. Gregory, Senior Deputy Attorney General, argued the cause for respondent Second Injury Fund (Deborah T. Poritz, Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel).
The opinion of the court was delivered by KEEFE, J.A.D.
Petitioner Francisco Perez appeals from a final judgment entered in the Workers' Compensation court after a plenary trial awarding him 32% permanent partial disability and dismissing his claim for Second Injury Fund benefits. On appeal, petitioner contends that the Workers' Compensation judge erred in fixing his disability within "a range of similar injuries" and without considering the extent to which the injury impacted on petitioner's ability to work in view of his limited education and training. Petitioner also contends that the objective medical evidence, considered with *363 the impact the injury had on his ability to work, required the judge to find that he was totally and permanently disabled.
We affirm the Workers' Compensation judge's determination that petitioner's permanent partial disability is less than the 75% estimated by petitioner's expert. Accordingly, we reject petitioner's contention that the evidence requires a determination that he is totally and permanently disabled. However, we conclude that the judge failed to consider the impact that petitioner's significant orthopedic injury had on his ability to secure work in view of petitioner's limited educational and intellectual resources. Thus, we remand the matter for reconsideration in accord with this opinion.
Petitioner was born in Puerto Rico in 1954. He has a sixth grade education, no special education or training beyond that, and is unable to read, write, or understand English. From the age of eighteen, he travelled back and forth between the United States and Puerto Rico working as a farm laborer in Puerto Rico and in landscaping and construction in the United States.
On April 17, 1989, petitioner was employed by respondent Capitol Ornamental, Concrete Specialties, Inc. (Capitol), as a mold maker. His job was to make fiberglass molds so that cement figures could be cast from the molds he made. Petitioner worked in that capacity on and off for approximately ten years. In addition to doing what he described as heavy work, petitioner also played baseball and jogged.
On the above date, petitioner injured his back while working on the job at Capitol. After the accident, petitioner had several diagnostic tests performed and underwent a laminectomy in August 1989. He then received physical therapy from September 1989 to April 1990. Thereafter, he underwent a second MRI and myelogram because of continuing back problems. Further surgery was discussed but rejected because it was believed that the surgery would not improve his condition. He was paid temporary disability benefits until June 1, 1992.
*364 Petitioner applied to the Division of Vocational Rehabilitation for job training. As a result, the Division sent him to the Mental Health Clinic associated with Perth Amboy Hospital where he received psychiatric treatment.
When the trial began in September 1993, petitioner testified that he had not worked since the day of the accident because of continuous pain in his low back radiating into the calf of his left leg. He said that he could neither sit nor stand for any length of time.
Dr. Floyd Krengel testified on behalf of petitioner, having last examined him one year prior to his testimony. He diagnosed petitioner's condition as: lumbo sacral sprain, bilateral lumbar paravertebral myositis, bilateral sacroiliac sprain, disc herniation at L5-S1, lumbar laminectomy and discectomy, residual surgical scarring, recurrent L5-S1 herniation, and left sciatic reference. Objectively, Dr. Krengel found marked flattening of the lumbar lordotic curve; limited side bending; difficulty performing heel to toe stands; bilateral spasm in the paravertebral muscles of the lumbar spine; positive Patrick and Lasegue signs on the left; and decreased sensitivity to the distribution of the L5-S1 nerves on the left side. Dr. Krengel opined that petitioner's orthopedic disability was 75% partial total and was causally related to the accident of April 17, 1989. He also opined that petitioner was totally disabled due to his orthopedic disability, lack of education, and the type of work petitioner was capable of performing.
Dr. Paul Kiell testified on behalf of the petitioner in the field of neurology and psychiatry, having examined petitioner on one occasion a year prior to his testimony. As a result of the examination, Dr. Kiell concluded that petitioner's neurologic disability was 60% of partial total. He further found that petitioner had a psychiatric disability of 17.5% of partial total because of an adjustment disorder. Dr. Kiell concluded that petitioner was totally disabled and "essentially unemployable due to his considerable orthopedic disability, his lack of training, and his illiteracy in English."
*365 On January 20, 1994, Dr. Nelson Manowitz, an orthopedist, testified on behalf of the respondent. Dr. Manowitz examined petitioner on four occasions between November 1990 and April 1992. Therefore, he had not seen the petitioner for more than one and one-half years. On Dr. Manowitz's last examination, he found that petitioner had intermittent left sided spasm with some reversal of the lordotic curve, as well as flexion, extension and lateral bending on both sides still approximately 15% less than normal. Petitioner exhibited no positive Patrick or Lasegue signs but continued to have a positive Goldthwait test on the left side. In his opinion, petitioner's continuing problems were due to scar tissue formation and not a recurrent disc. He felt that additional surgery was not indicated because it would probably produce more scar tissue and would likely worsen petitioner's symptomatology. In his opinion, petitioner's disability was 12.5% of partial total. Notwithstanding his assessment of disability, Dr. Manowitz admitted that petitioner could not lift anything heavier than fifteen pounds and would not be able to return to his former occupation. He testified that petitioner could only perform a sedentary job, using his extremities and his torso. However, Dr. Manowitz conceded that in arriving at his evaluation of 12.5% partial permanent disability, he did not consider that the injury deprived petitioner of being able to perform the work at which he earned his living during his entire life.
Dr. David Flicker testified on behalf of respondent in the field of neurology and psychiatry, having examined petitioner on one occasion. Dr. Flicker found that, whatever neurologic disability petitioner had, it overlapped with his orthopedic disability and was, therefore, not separable. He found no psychiatric disability.
On September 15, 1994, nine months after the last testimony was taken in the matter, the Workers' Compensation judge dictated his opinion into the record. Notwithstanding his finding that the opinions of all the physicians who testified were "clientbiased," the judge found that Dr. Manowitz's testimony was "the closest" to what he considered to be "the objective truth in this *366 case." The judge came to that conclusion because Dr. Manowitz had four separate opportunities to examine petitioner, and because his testimony was "thorough, detailed and well documented by references to the existing medical records." Notwithstanding that conclusion, the judge rejected Dr. Manowitz's estimate of permanent disability because it was "considerably below that level generally accorded a petitioner who has had a disc excision operation, including a lumbar laminectomy which, though medically successful, does not appear to have significantly reduced his level or frequency of pain...." Similarly, he rejected Dr. Krengel's estimate of disability because it was "so high when viewed against the nature of petitioner's injury, the surgical intervention and his present-day complaints as to clearly exemplify another instance of clear client bias."
Citing Saunderlin v. E.I. DuPont Co., 102 N.J. 402, 508 A.2d 1095 (1986), the judge rejected Dr. Kiell's finding of psychiatric disability because his testimony was "largely conclusionary in nature[.]" Ibid. As to the neurologic disability, the judge found that, although neurologic disability existed, it "overlaps in large measure the orthopedic complaint of radiculopathy and decreased sensation on the left side."
In conclusion, the judge found that petitioner suffered a 32% partial total permanent disability as a result of his work related injury resulting from a combination of orthopedic and neurologic injuries and "persistent lower left radiculopathy."
After this appeal was filed, and pursuant to R. 2:5-1(b), the Workers' Compensation judge submitted a supplementary opinion. He reemphasized his reasons for accepting the medical testimony and/or evaluations of the witnesses presented at trial. Particularly relevant to our decision in this matter, the judge stated:
A. To begin with it is always my intention serving as a Judge of Compensation to be consistent in the consideration of evaluation of injuries presented for review. This particular case involved a lumbar disc related surgery, and the award which I presented in my opinion was determined on a basis and with the purpose of being consistent with similar injuries previously presented to me for disability determination.

*367 B. The compensation charts applicable to and used by this court are drawn in a manner which provides significant increase in benefits at various steps of disability determination. My finding of 32% orthopedic/neurologic permanent disability placed petitioner's benefits in the first of what might be considered the preferred or serious injury categories (i.e. over 30 percent). This finding was based upon the fact that the petitioner had experienced surgical intervention as a result of his injury. While I was cognizant that the petitioner had in fact two successive operations I note for the record that the second operation did not extend to a different part of his body and did not seek to treat any complaints beyond those which were presented before the first operation. I also wish to note that the demeanor and testimony of the petitioner lacked a degree of sincerity which affected my judgment in determining the degree of disability.
The question is not what we would have decided had we been the trial judge in this case. The scope of appellate review is limited to a determination of whether the findings and conclusions of the judge of compensation could reasonably have been reached on sufficient credible evidence in the record, considering the proofs as a whole, giving due regard to his expertise in the field of workers' compensation and his opportunity of seeing the witnesses and evaluating their credibility. Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534, 397 A.2d 323 (1979); see also Close v. Kordulak Bros., 44 N.J. 589, 210 A.2d 753 (1965). Insofar as medical testimony is concerned, it is undisputed that the judge of compensation "is not bound by the conclusional opinions of any one or more, or all of the medical experts." Lightner v. Cohn, 76 N.J. Super. 461, 465, 184 A.2d 878 (App.Div. 1962); see also Margaritondo v. Stauffer Chem. Co., 217 N.J. Super. 560, 563, 526 A.2d 708 (App.Div. 1985), aff'd on remand, 217 N.J. Super. 565, 526 A.2d 711 (1986). Further, so long as the judge's findings are supported by articulated reasons grounded in the evidence, we must give deference to his expertise in assessing disability. Lewicki v. New Jersey Art Foundry, 88 N.J. 75, 88-90, 438 A.2d 544 (1981).
In light of the foregoing principles of law and our review of the record, we are satisfied that the judge of compensation properly evaluated the expert testimony "based upon the [doctors'] qualifications and demeanor, the inherent trustworthiness of [their] testimony, and the quality of the underlying examination[s] *368 upon which [their] opinions [were] based." Margaritondo, supra, 217 N.J. Super. at 563-564, 526 A.2d 708. Accordingly, we find no error in the judge of compensation's decision to credit the substance of Dr. Manowitz's testimony over that of Dr. Krengel, in respect of petitioner's orthopedic disability. Nor do we have any difficulty in the judge's decision to lump the neurological and orthopedic disability into one assessment of partial permanent disability. Cf. Poswiatowski v. Standard Chlorine Chemical Co., 96 N.J. 321, 329, 475 A.2d 1257 (1984). Further, the judge's assessment of the testimony concerning petitioner's alleged psychiatric disability is supported by our Supreme Court's holding in Saunderlin, supra.
In general then, we have no quarrel with the judge of compensation's decision that petitioner's orthopedic/neurological disability, standing alone, is less than the 75% partial total estimate given by Dr. Krengel, and more than the 12.5% estimate given by Dr. Manowitz. His reasons for rejecting both of those estimates were articulated in his decision and are supported by the record.
However, we conclude that the judge's assessment of 32% partial permanent disability is not sustainable on this record. Although we must defer to the judge of compensation's expertise in fixing percentages of disability, Lewicki, supra, deference need not be given where the judge has applied the wrong legal principles in coming to that conclusion. Mathesius v. St. Barnabas Medical Center, 265 N.J. Super. 83, 625 A.2d 567 (App.Div.), certif. denied, 134 N.J. 560, 636 A.2d 519 (1992).
Here, the respondent's expert conceded, and the judge of compensation acknowledged, that "the petitioner did not appear to be a person with abilities beyond his trade[.]" The judge ruminated rhetorically in his initial written opinion: "how many sitting jobs are available for someone with this laboring-type background who is virtually illiterate in English[?]" Dr. Manowitz admitted that he did not take that factor into consideration in assessing petitioner's disability. Unfortunately, neither did the judge of compensation. In his initial opinion, the judge said that the figure of 32% *369 disability "is a combination of orthopedic and neurologic injuries which have resulted in the surgical procedures (laminectomy and disc excision surgery) and persistent lower left radiculopathy." Later in his supplementary opinion, the judge said that his goal was to be "consistent with similar injuries previously presented to [him] for disability determination."
The foregoing quotes from the judge's decision leave us with the impression that the judge believed that a laminectomy and discectomy of the kind involved in this case, including the residuals experienced by this petitioner, should produce nearly identical disability awards, regardless of who the petitioner is. We disagree with that approach and find it contrary to the Worker's Compensation statute and case law.
Permanent partial disability is defined in the Worker's Compensation Act as follows:
Disability permanent in quality and partial in character means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employees's working ability. ...
[N.J.S.A. 34:15-36 (emphasis added).]
In Perez v. Pantasote Inc., 95 N.J. 105, 469 A.2d 22 (1984), the Supreme Court stated that an award of partial permanent disability is dependent upon the petitioner satisfying a two prong test. Id. at 116, 469 A.2d 22. First, petitioner must make a "satisfactory showing of demonstrable objective medical evidence of a functional restriction of the body, its members or organs." Ibid. Petitioner has met that test in this case. Second, petitioner "must establish either that he has suffered a lessening to a material degree of his working ability or that his disability otherwise is significant and not simply the result of a minor injury." Id. at 118, 469 A.2d 22. When evaluating the second component, the trial court should look to the "employee's capability to perform his work duties, as differentiated from disability in the broader sense to carry on the ordinary pursuit of life." Id. at 117, 469 A.2d 22. *370 Thus, under the second prong, the "question to be answered is whether there has been an appreciable impairment of the employee's ability to work." Ibid.
While one of the aims of the 1980 amendments to the Worker's Compensation Act was "to eliminate awards for minor partial disabilities, [another goal was] to increase awards for the more seriously disabled, ...." Id. at 114, 469 A.2d 22. In essence, the approach to assessing disability is not significantly different in this respect than under prior case law. See Katz v. Township of Howell, 67 N.J. 51, 63, 335 A.2d 14 (1975) ("the theory is that `the compensation is measured by the impairment of earning capacity, immediate or in the future.'" Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108, 112, 194 A. 294 (E. & A. 1937)). The "focus" of a disability award is "on the functional ability of the worker[.]" Poswiatowski v. Standard Chlorine Chemical Co., supra, 96 N.J. at 332, 475 A.2d 1257.
Thus, the language of the statute, as well as the relevant case law, establishes that an employee's ability to work is critical to the evaluation of the worker's permanent partial disability award. Clearly, an educated person who earns his living reading, writing and performing other sedentary duties, having the same injury and the same residuals as the petitioner here, may have the same orthopedic disability as the petitioner. However, that same person is less disabled in terms of an ability to work than this petitioner, an illiterate laborer who is incapable of doing anything more than the job which his orthopedic disability prevents him from doing. The Workers' Compensation judge erred in failing to consider these relevant factors in assessing this petitioner's award.
The matter is remanded for reconsideration of the extent of petitioner's permanent partial disability in light of the principles discussed herein. In view of the staleness of the expert witness reports, the petitioner should be re-examined by Dr. Krengel and by Dr. Manowitz, at a minimum, and the record should be supplemented to reflect their current assessment of petitioner's disability. See Allen v. Ebon Services Intern., Inc., 237 N.J. Super. *371 132, 135, 567 A.2d 228 (App.Div. 1989) ("An award of compensation for partial permanent disability must be based on the disability that exists at the time of the determination.").
Lastly, in acknowledging that a finding of less than 75% orthopedic/neurologic disability is sustainable, we necessarily recognize that the odd lot doctrine was inapplicable to the petitioner on this record. See N.J.S.A. 34:15-36 and Darmetko v. Electron Technology, 243 N.J. Super. 536, 580 A.2d 1087 (App.Div. 1990), appeal dismissed, 126 N.J. 316, 598 A.2d 877 (1991). That is to say, regardless of the relevance of such factors as petitioner's education and training in determining the proper amount of permanent partial disability, petitioner could not be awarded permanent total disability using those same factors. Ibid. However, we do not foreclose the possibility that the re-examinations we have ordered to take place in connection with the remand proceedings will reveal a purely medical disability that satisfies the statutory requirement, and that the other factors we have alluded to herein may justify an odd lot doctrine award when considered in the context of any such medical disability assessment.
Inasmuch as the only physical disability from which the petitioner suffers stems from the accident of April 17, 1989, the Second Injury Fund will not be implicated regardless of what occurs on remand. Therefore, the order dismissing the Second Injury Fund is affirmed.
Reversed and remanded as to the respondent Capitol Ornamental only.