NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3486-15T3

DAVID KALUCKI,

 Petitioner-Appellant,

v.

UNITED PARCEL SERVICE,

 Respondent-Respondent.
_________________________________

 Submitted August 8, 2017 – Decided August 15, 2017

 Before Judges Sabatino and O'Connor.

 On appeal from the New Jersey Department of
 Labor and Workforce Development, Division of
 Workers' Compensation, Claim Petition Nos.
 1998-28398 and 2002-21506.

 Shebell & Shebell, LLC, attorneys for
 appellant (Danielle S. Chandonnet, of counsel
 and on the brief).

 Brown & Connery, LLP, attorneys for respondent
 (Christopher M. Campanaro, on the brief).

PER CURIAM

 Claimant David Kalucki appeals from a March 10, 2016 decision

by a workers' compensation judge denying all but one of his claims

for increased disability. The compensation judge issued his
decision after considering claimant's testimony and medical

testimony from the parties' competing experts. Applying our

limited scope of review and appropriate deference to the expertise

of the compensation court, we affirm.

 By way of background, claimant was employed in a clerical

position by respondent United Parcel Service.1 On June 24, 2009,

claimant received two separate awards of disability from the

compensation court for two separate claims that he litigated. In

one claim (Docket No. CP #1998-28398) claimant received an award

of 40% permanent partial total disability associated with left

shoulder and cervical injuries, subject to a credit of 37.5%

relating to a previous compensation award. The shoulder and neck

condition had been the subject of two surgeries. On his other

prior claim award (Docket No. CP #2002-21506), claimant received

a 17.5% permanent partial total disability due to bilateral carpal

tunnel syndrome, subject to a credit of 15% for a previous carpal

tunnel award.

 According to claimant, several of his conditions and symptoms

worsened in the years following the 2009 awards, even though he

has not sustained any intervening injuries. Among other things,

1
 Since the time of the compensation judge's opinion, claimant has
reportedly retired. However, he presents no argument in his brief
that his retirement was forced due to the alleged increase in the
severity of his disabilities.

 2 A-3486-15T3
he complained that his left shoulder and neck were more restricted

in range of motion, and that it was painful for him to move his

neck from side to side. He asserted that he cannot lay on his

left side, and that his shoulder aches and is numb to the touch.

Claimant further asserted an aggravation of his carpal tunnel

condition, complaining of numbness in his left hand and a loss of

grip strength. Claimant also separately complained of an increased

loss of hearing.

 Claimant presented at trial expert medical testimony and a

written report from a general practitioner who examined him on

November 22, 2011. 2 That same expert had previously examined

claimant in 1999, 2002, 2004, and 2007 in connection with prior

awards. In his most current report, claimant's expert noted

tenderness and spasm in claimant's left shoulder, limited rotation

of twenty percent in the head and neck, and abduction and forward

elevation of the left arm and shoulder limited to ninety percent.

The expert further observed generalized tenderness in claimant's

wrists and arms, with flexion and extension of the wrists reduced

by fifteen percent, and a limitation of radial and ulnar deviation

2
 The record indicates claimant's expert is a Fellow of the
American Academy of Disability Evaluating Physicians, and has been
qualified as an expert in the compensation court on many occasions.
Respondent's counsel at trial did not object to the expert's
qualifications to testify, and recognized he has been performing
disability evaluations for many years.

 3 A-3486-15T3
and rotation in both wrists. Based on his examination, claimant's

expert found an increase in his disabilities since the time of the

2009 awards, estimating an increase of twenty-five percent in the

right hand, twenty-five percent in the left hand, and thirty

percent in the injuries relating to the neck. A separate medical

expert diagnosed and quantified claimant's increased loss of

hearing.

 Respondent's expert, a board-certified orthopedic physician,

markedly disagreed with the findings of claimant's expert. The

orthopedist examined claimant on August 17, 2011, having

previously examined him for the neck and shoulder injuries in

2007. The orthopedist took an x-ray of the shoulder and discerned

no objective findings of any significant pathology or changes in

the cervical area. On physical examination, the orthopedist found

that claimant's range of motion had actually "significantly

improved" from his last exam in 2007, and that claimant's prior

disability level had not worsened.

 With respect to claimant's carpal tunnel condition, the

orthopedist found no objective worsening of his overall condition.

The expert found no atrophy, and no decreased sensation, although

he did note negative grip strength in the right hand. The

orthopedist concluded that claimant's level of disability for the

 4 A-3486-15T3
prior awards had not changed, and that he was "at maximum benefit

of treatment."

 Sifting through this medical evidence, the compensation judge

made the following findings3 in his oral decision:

 In considering the testimony of the
 various witnesses, the Court finds that the
 petitioner despite having increased
 subjective complaints with respect to his
 shoulder, neck and carpal tunnel problems
 never sought any medical treatment whatsoever
 to attempt to alleviate his alleged increased
 symptomatology. It is this Court's view that
 is the petitioner's pain and complaints were
 increasing to the level he alleges medical
 treatment would have been sought.
 Petitioner's decision not to seek any
 treatment displays to this Court that his
 shoulder, neck and carpal tunnel problems have
 not worsened to any material extent. The
 Court finds that the petitioner was also able
 to work his full-duty job and did not seek any
 accommodations in terms of either changing his
 duties or work hours. The Court believes that
 the petitioner would have requested some
 accommodation from the respondent if his
 problems had worsened as alleged. He also
 lost no time from work due to his medical
 problems. This does not support his position
 of increased disability.

 . . . .

 In analyzing the testimony of the medical
 experts, the Court rejects the opinion of
 [claimant's expert] as he is clearly less
 qualified than respondent's expert[.] . . .
 [The latter expert's] superior training in the
 area of orthopedics places him in a better

3
 The record does not explain why the judge's decision was not
issued until two years after the evidentiary record closed.

 5 A-3486-15T3
position with respect to the determination of
petitioner's alleged increase in disability
since his last appearance before the Court. A
review of [claimant's expert's] examinations
indicate[s] that many of the objective
findings noted in [that] doctor's various
reports showed no change whatsoever. Findings
such as sidebending, flexion and extension,
as well as abduction, remained the same which
displayed to the Court that the petitioner's
condition had not worsened. The fact that
atrophy . . . was indicated in the doctor's
report in 2007, but not in 2011, actually
points to an improvement of the petitioner's
condition. The Court finds that [claimant's
expert's] finding of an over 100 percent
disability when combined, does not ring true
based upon petitioner's continued full-duty
employment. [Respondent's expert's] finding
of full motion with respect to petitioner's
cervical spine, as well as lateral bending and
rotation and normal reflexes, do not support
a finding of an increase in the petitioner's
disability. The negative Spurling's test, as
well as lack of atrophy, further supports
[respondent's expert's] view of no increase
in disability. The Court accepts this view
as it is supported by objective medical
findings rather than [claimant's expert's]
increase based upon petitioner's subjective
complaints.

 The Court also accepts [respondent's
expert's] view with respect to the
petitioner's allegation of carpal tunnel
increase. The finding of full motion of
dorsiflexion, pronation, supination along
with no decreased sensation of the radial
distribution supports his view that there is
no increase in carpal tunnel disability. The
petitioner presented with normal hand grip
strength during the doctor's examination and
the decreased sensation of an ulnar
distribution is not caused by carpal tunnel.
The fact that the dermatomal pattern as noted

 6 A-3486-15T3
 by the doctor in his examination of the
 petitioner was not correct indicates that the
 petitioner's complaints were not as a result
 of an increase in his carpal tunnel problem.
 The Court believes [respondent's expert] and
 finds that there is no increase with respect
 to the petitioner's carpal tunnel disability.

 [(Emphasis added).]

 Apart from these findings as to parts of the body germane to

the present appeal, the judge concluded that claimant had

separately established a one-percent increase in occupationally-

induced hearing loss, and made a corresponding award for that

discrete injury. Neither party has appealed the hearing loss

determination.

 On appeal, claimant argues that the compensation judge erred

in rejecting his claims for increased disability concerning his

neck and shoulder, as well as his carpal tunnel injury. He

contends that the judge should have adopted the opinions of

claimant's own expert, and deemed credible his claims of worsening

and causation. Claimant further asserts that the judge unfairly

gave more credence to respondent's medical expert because that

expert, unlike claimant's examining doctor, was a board-certified

orthopedist. Claimant further asserts that the judge's decision

was inconsistent in various respects and not supported by the

evidence.

 7 A-3486-15T3
 The applicable law imposes upon an injured worker such as

claimant, who seeks additional compensation benefits following an

earlier award, the burden of proving an increased incapacity or

an increase in functional loss. N.J.S.A. 34:15-27; Yeomans v.

City of Jersey City, 27 N.J. 496, 508-09 (1958); Brandt-Shaw v.

Sands Hotel, 282 N.J. Super. 106, 109 (App. Div. 1995). Such an

alleged increase in incapacity must be shown to arise from, and

be causally connected with, the original workplace injury.

Yeomans, supra, 27 N.J. at 508. Moreover, a claimant must satisfy

the general principle of workers' compensation law requiring that

disability be established by appropriate objective evidence, and

that disability cannot be based solely upon a claimant's subjective

complaints of a present level of incapacity. Perez v. Pantasote,

Inc., 95 N.J. 105, 114-16 (1984).

 Our scope of review of fact-laden decisions by compensation

judges is limited. We must consider whether the findings made by

the judge of compensation "'could reasonably have been reached on

sufficient credible evidence'" in the record, "considering 'the

proofs as a whole,'" giving due regard to the judge's opportunity

to observe and hear the witnesses and to evaluate their

credibility, and to the judge's expertise in the field of workers'

compensation. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)

(quoting State v. Johnson, 42 N.J. 146, 162 (1964)); see also

 8 A-3486-15T3
Brock v. Pub. Serv. Elec. & Gas Co., 149 N.J. 378, 383 (1997);

Perez v. Capitol Ornamental, Concrete Specialties, Inc., 288 N.J.

Super. 359, 367 (App. Div. 1996). In particular, a reviewing

court generally must defer to the findings of credibility made by

a judge of compensation, as well as to the judge's expertise in

analyzing medical testimony. Kaneh v. Sunshine Biscuits, 321 N.J.

Super. 507, 511 (App. Div. 1999); see also Kovach v. Gen. Motors

Corp., 151 N.J. Super. 546, 549 (App. Div. 1978) ("It must be kept

in mind that judges of compensation are regarded as experts.")

(citing Goldklang v. Metro. Life Ins. Co., 130 N.J. Super. 307,

311 (App. Div.), aff’d o.b., 66 N.J. 7 (1974)). Where there is

sufficient credible evidence in the record, a compensation judge's

findings of fact are binding on appeal, and those findings must

be upheld "even if the court believes that it would have reached

a different result." Sager v. O.A. Peterson Constr., Co., 182

N.J. 156, 164 (2004) (citations omitted).

 Applying these legal principles, we affirm the determinations

reached by the worker's compensation court, substantially for the

reasons the judge set forth in his March 10, 2016 oral decision.

There is more than sufficient proof in the record to sustain the

judge's conclusion that claimant did not meet his legal burden of

proving increased incapacity of his neck, shoulder, and carpal

tunnel conditions causally related to his workplace activities.

 9 A-3486-15T3
The objective findings of respondent's expert in particular amply

support the judge's conclusions.

 Although claimant testified that he has experienced an

increase in certain subjective symptoms, the judge had a reasonable

basis to conclude that those subjective claims, apart from the

hearing loss, were not sufficiently corroborated by objective

proof. Claimant continued to work after his 2009 award without

any material change in his duties. Apart from continuing to take

over-the-counter pain medications, he did not pursue additional

treatment to attempt to alleviate his symptoms. Although we

recognize that respondent's expert acknowledged that further

surgery would not be likely to benefit claimant, there is no

evidence that claimant pursued any other methods of palliative

care since the time of his prior awards.

 In addition, respondent has identified several portions from

claimant's testimony from the earlier 2009 proceeding that are

essentially the same or similar in nature to his present

complaints. As just one example, claimant's expert testified that

plaintiff's range of motion in his neck on examination in 2011 was

limited by twenty degrees, as compared with a higher limitation

of twenty-five percent revealed on examination in 2007.

 The compensation judge was entitled under case law to find

respondent's expert more credible than claimant's expert. In

 10 A-3486-15T3
situations where qualified experts present opposing opinions on

disputed issues, the trier of fact may accept the testimony or

opinion of one expert, in full or in part, and reject the other.

Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App.

Div. 1961) (citations omitted). See also Brown v. Brown, 348 N.J.

Super. 466, 478 (App. Div.) (citing Carey v. Lovett, 132 N.J. 44,

64 (1993)), certif. denied, 174 N.J. 193 (2002). This principle

flows out of the well-known proposition that jurors, or a judge

in a bench trial, have the best "opportunity to hear and see the

witnesses and to get a 'feel' for the case that the reviewing

court [cannot] enjoy." Twp. of W. Windsor v. Nierenberg, 150 N.J.

111, 132 (1997) (citing State v. Whitaker, 79 N.J. 503, 515-16

(1979)).

 Our appellate courts are consequently "reluctant" to

interfere with a judge's decision, where the "error asserted is

largely a matter of how much weight should be accorded [to]

competing expert opinion." Peer v. Newark, 71 N.J. Super. 12, 31

(App. Div. 1961) (citing Coll v. Sherry, 29 N.J. 166, 173 (1959)),

certif. denied, 36 N.J. 300 (1962). The Supreme Court has applied

these principles specifically in the workers' compensation

context. See Paul v. Baltimore Upholstering Co., 66 N.J. 111,

121-22 (1974) (concluding that it is within the province of the

 11 A-3486-15T3
compensation judge to accept the opinion of one party's expert and

reject the opinion of the other party's expert).

 As part of his credibility assessment, the judge reasonably

took into account that claimant's expert, unlike the expert for
 4
respondent, is not a board-certified orthopedic physician.

Although we surely would not endorse a per se principle that

medical experts who are board-certified are invariably more

credible than expert physicians who are not, the compensation

judge did not espouse such a rigid principle in this case.

Instead, the judge cited the board certification as one of several

factors in his credibility assessment. Moreover, respondent's

expert performed an x-ray, an objective test, whereas claimant's

expert did not. In addition, the judge posed his own pointed

questions to the experts, which reflects his careful consideration

of the evidence and his demonstrated knowledge as a jurist of the

pertinent medical terminology and concepts.

4
 "The American Board of Medical Specialties ("ABMS") and American
Osteopathic Association ("AOA") recognize a number of specialty
practice areas and offer 'board certification' in each
specialty. A physician seeking board certification must satisfy
heightened training and testing requirements." Nicholas v.
Mynster, 213 N.J. 463, 469 n.1 (2013) (citing ABMS, About Board
Certification, http://www.certificationmatters.org/about-board-
certified-doctors/about-board-certification.aspx; AOA Board
Certification, http://www.osteopathic.org/inside-
aoa/development/aoa-board-certification/Pages/default.aspx
(2013)).

 12 A-3486-15T3
 Although claimant argues that respondent's expert's opinions

are inconsistent or flawed in various respects, those alleged

shortcomings, even if we accepted them as such, do not compel the

repudiation of his overall conclusions that were found credible

by the judge.

 Affirmed.

 13 A-3486-15T3