**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5547-18

PATRICIA COSTANZO,

    Petitioner-Appellant,

v.

MERIDIAN REHAB,

    Respondent-Respondent.

_____

Argued June 2, 2021 – Decided June 17, 2021

Before Judges Haas and Mawla.

On appeal from the Department of Labor and Workforce Development, Division of Workers' Compensation, Case No. 2017-14400.

Danielle S. Chandonnet argued the cause for appellant (Shebell & Shebell, LLC, attorneys; Raymond P. Shebell, Sr. of counsel; Danielle S. Chandonnet, on the brief).

Carla P. Aldarelli argued the cause for respondent (Capehart & Scatchard, PA, attorneys; Carla P. Aldarelli, of counsel; Maura Burk, on the brief).

PER CURIAM

Petitioner Patricia Costanzo appeals from the July 9, 2019 order of the Division of Workers' Compensation, which denied her motion for additional medical and temporary benefits related to her left knee. We affirm.

The procedural history and facts are fully set forth in the comprehensive written decision rendered by Judge of Compensation Salvatore Martino following a five-day trial. Therefore, we need only recite the most salient details here.

On April 1, 2016, petitioner was working as a recreational aide for respondent Meridian Rehab. While performing her duties, she slipped, fell forward to the ground, and landed on both knees. She felt pain in her left knee. Petitioner filed a claims petition and respondent accepted her claim for treatment for her left knee.

An MRI was taken of petitioner's left knee on June 14, 2016. The MRI report revealed no meniscus tear, no ligament tear, and no fracture. There was preexisting thinning of the patellofemoral cartilage and preexisting osteoarthritis in the knee.

Respondent paid for petitioner's left knee treatment, which consisted of medications, physical therapy, cortisone injections, and a series of Viscoelastic injections. Petitioner thereafter resumed her regular work for respondent.

A-5547-18

Petitioner testified that she suffered a right knee meniscus tear in August 2017 while walking on a beach.[1] She underwent a right knee arthroscopic meniscectomy that same month.

In January 2018, petitioner underwent another MRI on her left knee. Unlike the June 2016 MRI, the new MRI showed that petitioner now had a torn medial meniscus tear with a displaced fragment in her left knee. She also had a torn anterior cruciate ligament (ACL) tear in the same knee. Her preexisting arthritis was still present in the knee.

In February 2018, petitioner filed a motion seeking to require respondent to pay for additional treatment for her left knee. Respondent denied liability and the matter proceeded to trial before Judge Martino.

Petitioner testified that she was experiencing pain in her left knee. She denied injuring the knee on the beach in August 2017 and denied any other incident involving her knee. Judge Martino found that while petitioner "answered the majority of the questions [posed to her] in a straightforward manner[,] [t]here were a few occasions when . . . [p]etitioner seemed to be

_____

[1] This injury was not compensable because it did not occur during the course of petitioner's employment.

evasive in responding to counsel's questions. And she seemed to minimize the effect that her right knee condition had on her activities."

Petitioner also presented the testimony of Cary Skolnick, M.D., who was accepted by the court as an expert in the field of orthopedic surgery. Based upon his examination of petitioner, Dr. Skolnick opined that the tears in petitioner's left knee were related to the injury she sustained when she fell on the ground in April 2016.

In rendering this opinion, Dr. Skolnick conceded that neither the meniscus tear nor the ACL tear were present in the June 2016 MRI. However, he insisted that petitioner's medial meniscus was "elongated" when her knee struck the ground and that it gradually tore over time. Dr. Skolnick also claimed that petitioner's ACL was stretched in the incident to the point where there were just a few fibers holding it together. Eventually, the remaining fibers broke and the tear became apparent on the MRI. Dr. Skolnick also testified that even though petitioner suffered from preexisting arthritis in the left knee before the April 2016 fall, the fact that her left knee struck the ground caused the arthritis to worsen to the point where additional treatment was needed.

Judge Martino found that Dr. Skolnick's opinions were not credible. The judge explained that the expert's testimony was simply not logical and he "did

4

not directly address the questions posed to him."  Dr. Skolnick's demeanor on the stand further weakened his credibility because he "became abrupt and . . . somewhat argumentative with . . . [r]espondent's attorney" during cross-examination.  Judge Martino also noted that the facts Dr. Skolnick used as the basis for his opinions were "tenuous."

The judge was more impressed with the testimony provided by respondent's expert, Shawn D. Sieler, M.D.  Dr. Sieler testified that petitioner suffered only a left knee contusion in the April 2016 fall, received appropriate treatment for that injury, and fully recovered.  Contrary to Dr. Skolnick's claims, Dr. Sieler stated that a meniscus or ACL "cannot tear spontaneously" and the tears found on the January 2018 MRI "can only be explained by some subsequent traumatic incident."

Dr. Sieler found no evidence of any "elongation" or "stretching" of the structures within petitioner's left knee on the June 2016 MRI and testified that the arthritis found in both MRIs preexisted the April 2016 accident.  Thus, Dr. Sieler concluded that petitioner "remain[ed] at maximal medical improvement from the contusion injury of the left knee" and that the conditions she now sought treatment for were not caused by the April 2016 incident.

A-5547-18

Judge Martino found that Dr. Sieler's testimony was credible and persuasive. The judge explained that Dr. Sieler's "testimony was in accord with his written expert opinion. His testimony was logical and direct. He answered questions clearly and directly." Moreover, unlike Dr. Skolnick, respondent's expert's testimony was supported by the MRIs submitted in evidence.

As a result, Judge Martino concluded:

> The [c]ourt finds that the testimony elicited in this matter and the underlying facts of this case establishes and confirms that . . . [p]etitioner currently suffers from left knee pathology. However as the [c]ourt has previously indicated, [Dr. Sieler's] opinion is more credible and persuasive regarding the causal relation between the current status of . . . [p]etitioner's left knee and the original injury. The [c]ourt has given due weight to the credentials of [Dr.] Skolnick, but finds the opinions of Dr. Sieler to be more logical and convincing in this particular matter with regard to the progression of . . . [p]etitioner's left knee complaints and pathology.
>
> While it is clear that more severe pathology currently exists as compared to the time period closer to the injury date, there does not appear to be a reasonable connection between the mechanism of the injury and the current state of her pathology. The [c]ourt rejects the opinion of [Dr.] Skolnick as his opinion regarding the causal relationship between . . . [p]etitioner's current physical condition and the accident is not supported by a reliable factual basis and is speculative. Petitioner's expert simply could not meet the burden required to establish the causal

6

connection between the original injury and the current condition of . . . [p]etitioner's knee.

Based upon the foregoing findings of fact and law, the [c]ourt finds that . . . [p]etitioner has failed to establish[ ] by objective, reasonable evidence that a need [exists] for additional treatment regarding a "work related" injury to [her] left knee.

This appeal followed.

On appeal, petitioner contends that "sufficient objective medical evidence was presented at trial to meet petitioner's burden to establish the need for treatment as necessary and related to the work injury." She also asserts that Judge Martino erred in assessing Dr. Skolnick's credibility. We disagree with both of these contentions.

The New Jersey Workers' Compensation Act is "humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense." Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 586 (1959). The Act must be liberally construed "in order that its beneficent purposes may be accomplished." Torres v. Trenton Times Newspaper, 64 N.J. 458, 461 (1974). However, this canon of liberal construction of the Act "does not extend to 'the evaluation of credibility or of weight or sufficiency of evidence.'" Lindquist v. City of Jersey City Fire Dep't.,

175 N.J. 244, 258 (2003) (quoting Oszmanski v. Bergen Point Brass Foundry, Inc., 95 N.J. Super. 92, 95 (App. Div. 1967)).

Pursuant to N.J.S.A. 34:15-1, a compensable workers' compensation injury must be caused by an accident "arising out of and in the course of" the worker's employment. An employer is required to "furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible . . . ." N.J.S.A. 34:15-15. However, there must be evidence that the issues complained of are indeed the "effects" of the injury that occurred, and "a successful petitioner in workers' compensation generally must prove both legal and medical causation when those issues are contested." Lindquist, 175 N.J. at 259. "Medical causation means the injury is a physical or emotional consequence of work exposure" and "that the disability was actually caused by the work-related event." Ibid.

"It is the petitioner's burden to establish a causal link between the employment and the disease." Kiczula v. Am. Nat'l Can Co., 310 N.J. Super. 293, 303 (App. Div. 1998). "The link must be proven by a preponderance of the evidence," ibid., and the focus is on "the proof of a causal connection between

working conditions and the harm." Giambattista v. Thomas A. Edison, Inc., 32 N.J. Super. 103, 112 (App. Div. 1954). "The standard is one of reasonable probability; i.e., whether or not the evidence is of sufficient quality to generate a belief that the tendered hypothesis is in all likelihood the truth." Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 72 (App. Div. 1989).

In reviewing decisions of judges in the Division of Workers' Compensation, "[t]he factual findings of the compensation court are entitled to substantial deference." Ramos v. M & F Fashions, 154 N.J. 583, 594 (1998). We limit our inquiry

> to whether the findings made by the Judge of Workers' Compensation could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of [the] one who heard the witnesses to judge of their credibility and with due regard to his expertise.
>
> [Ibid. (quoting Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 534 (1979)).]

We may not substitute our own factfinding for that of the judge of compensation. Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). We must defer to the factual findings and legal determinations made by the judge of compensation "unless they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to

offend the interests of justice.'" Lindquist, 175 N.J. at 262 (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994)). While the judge of compensation has "expertise with respect to weighing the testimony of competing medical experts and appraising the validity of [the petitioner's] compensation claim," Ramos, 154 N.J. at 598, the judge must "carefully explain[] why he considered certain medical conclusions more persuasive than others." Smith v. John L. Montgomery Nursing Home, 327 N.J. Super. 575, 579 (App. Div. 2000).

Against this backdrop, and mindful of our standard of review, we affirm substantially for the reasons expressed by Judge Martino in his thorough written decision. We add only the following brief comments.

Contrary to petitioner's contentions on appeal, there was ample evidence in the record to support the judge's conclusion that the current condition of petitioner's left knee was not related to the injury she suffered when she fell at work in April 2016. At that time, petitioner suffered only a contusion. The MRI taken in June 2016 revealed no meniscus tear and no ACL tear. Although the MRI showed that petitioner had arthritis in the knee, this was a preexisting condition.

As Dr. Sieler testified, and Judge Martino found, the meniscus and ACL tears that the January 2018 MRI showed did not occur at the time of the April 2016 accident and did not spontaneously occur on their own. There was no medical evidence that the arthritis in her left knee had worsened as the result of the April 2016 fall. Therefore, the judge properly concluded that petitioner was not entitled to additional treatment to her left knee because her current condition was not caused by a work-related incident.

We also reject petitioner's claim that the judge erred in according greater weight to the testimony of Dr. Sieler than the testimony of Dr. Skolnick. Compensation judges have "expertise with respect to weighing the testimony of competing medical experts." Ramos, 154 N.J. at 598. This court "may not 'engage in an independent assessment of the evidence as if it were the court of first instance.'" Sager v. O.A. Peterson Constr., 182 N.J. 156, 164 (2004) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Compensation judges who see and hear the testimony are in the best position to assess the demeanor and credibility of the expert witnesses. Ibid.

A "judge of compensation 'is not bound by the conclusional opinions of any one or more, or all of the medical experts.'" Kaneh v. Sunshine Biscuits, 321 N.J. Super. 507, 511 (App. Div. 1999) (quoting Perez v. Capitol

11

Ornamental, Concrete Specialties, Inc., 288 N.J. Super. 359, 367 (App. Div. 1996)).  "That [the judge] gave more weight to the opinion of one physician as opposed to the other provides no reason to reverse th[e] judgment."  Bellino v. Verizon Wireless, 435 N.J. Super. 85, 95 (App. Div. 2014) (alterations in original) (citing Smith, 327 N.J. Super. at 579).

Here, Judge Martino fully articulated his reasons for crediting Dr. Sieler's testimony over that provided by Dr. Skolnick.  We discern no basis for disturbing his well-reasoned conclusion.[2]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2]  Although the judge briefly noted that he had observed Dr. Skolnick provide more credible testimony on prior occasions, this was a fleeting comment and not, as petitioner now asserts, a basis for reversal.  As summarized above, the judge's reasons for giving more weight to Dr. Sieler's expert opinions were squarely based upon the testimony both experts gave at the trial in this matter.

A-5547-18